UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

GENESIS INSURANCE COMPANY,  )

Plaintiff,  )

vs.  )                  Civil Action No.:

ALLEN C. HARPER, LARAINE FRAHM,  )
ALAN JACOBS, DAVID RUSH and  )
LUIGI SALVANESCHI,  )

Defendants.  )

**00-7762**

**CIV-ROETTGER**

**MAGISTRATE JUDGE**
**SELTZER**

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Genesis Insurance Company ("Genesis"), for its Complaint against the above

named defendants, alleges as follows:

### NATURE OF ACTION

1.      This is an action by Genesis pursuant to 28 U.S.C. §§ 2201 and 2202 for a

declaratory judgment regarding its rights and obligations under Genesis' Directors and Officers

Liability Insurance Policy No. YXB001117B (the "Policy"), issued to First American Railways,

Inc. ("FAR") for the policy period April 29, 1998 to April 29, 1999 (with a subsequently

negotiated one-year discovery period terminating on April 29, 2000), with respect to the

adversary proceeding captioned Morris I. Berger, the Chapter 7 Trustee for the Bankruptcy

Estates of First American Railways, Inc. v. American Heritage Railways, et al., Adv. Pro. No.

2197-BKC-PGH (the "Berger" Action"), filed in In re First American Railways, Inc., Fun Trains,

Inc., Nos. 98-27101-BKC-PGH and 98-27102-BKC-PGH (Bankr. S.D. Fla., Broward Division).

240944v1

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) (1).

There is complete diversity of citizenship between plaintiff and defendants and the amount in

controversy exceeds the sum of $75,000, exclusive of interest and costs. An actual controversy

within the meaning of 28 U.S.C. § 2201 exists between the parties.

3.      Venue is proper pursuant to 28 U.S.C. § 1391, in that a substantial part of the

events giving rise to the claims at issue in this action occurred in this district.

## PARTIES

4.      Plaintiff Genesis is a corporation organized and existing under the laws of the

State of Connecticut with its principal place of business in Stamford, Connecticut.

5.      On information and belief, at times pertinent to the allegations set forth herein,

defendant Allen C. Harper served as President and Chairman of the Board of Directors of FAR.

On information and belief, Mr. Harper is a resident of Florida.

6.      On information and belief, at times pertinent to the allegations set forth herein,

defendant Laraine Frahm served as a Director of FAR, and is a resident of Florida.

7.      On information and belief, at times pertinent to the allegations set forth herein,

defendant Allan Jacobs served as a financial advisor to FAR, and is a resident of Florida. It is

alleged in the Berger Action that Mr. Jacobs also served as Chief Executive Officer and

"functioning president" of FAR at times pertinent to the allegations set forth herein.

8.      On information and belief, at times pertinent to the allegations set forth herein,

defendant David Rush served as a Director of FAR, and is a resident of Florida.

9.      On information and belief, at times pertinent to the allegations set forth herein,

defendant Luigi Salvaneschi served as a Director of FAR, and is a resident of Florida.

240944v1                                    - 2 -

## FACTUAL ALLEGATIONS

### The Policy

10.     Genesis issued the Policy to FAR for the policy period April 29, 1998 to April 29, 1999. A true and complete copy of the Policy is attached hereto as Exhibit A. Morris I. Berger, as the Chapter 7 Trustee for the bankruptcy estate of FAR (hereafter, the "Trustee"), subsequently purchased discovery coverage on behalf of FAR for the one-year period April 29, 1999 to April 29, 2000.

11.     Subject to all of its terms, conditions and limitations, the Policy provides coverage for loss arising from claims first made against FAR's directors and officers during the policy period or the discovery period. It provides an aggregate limit of liability of $5 million, inclusive of defense costs, but does not impose a duty on Genesis to defend any insureds.

12.     As set forth in paragraphs 17-33 below, the Policy, by its terms, precludes coverage for the Berger Action.

### The Berger Action

13.     FAR is a company formerly involved in the development of entertainment-based passenger rail service. On October 6, 1998, FAR and its subsidiaries Fun Trains, Inc. and Florida Fun Trains, Inc. filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code. The Trustee was appointed to serve as Chapter 7 Trustee for the bankruptcy estate of FAR on or about December 9, 1998.

14.     The Trustee filed the initial complaint in the Berger Action on April 28, 2000. An amended complaint was filed on August 7, 2000. The complaint and the amended complaint allege that the Defendants herein effectuated and/or approved an eleventh-hour sale of FAR's most valuable asset – the outstanding shares of Durango Silverton Narrow Gauge Railroad, Inc. ("DSNG") – to a company newly founded by FAR's owner, defendant Harper, at a time when the Defendants understood that FAR was insolvent and that bankruptcy proceedings were

240944v1                                                                                        - 3 -

imminent. The Trustee seeks (i) to avoid and recover the allegedly fraudulent transfer pursuant

to 11 U.S.C. §§ 544, 548, 550 and Florida Statutes Chapter 726; (ii) to compel turnover of

property of the estate pursuant to 11 U.S.C. § 542; (iii) to impose a constructive trust on

defendant Harper and the company founded by him to purchase DSNG; and (iv) to recover

damages allegedly arising from conversion, breach of fiduciary duty and unjust enrichment.

15.     By letter dated June 12, 2000, Genesis advised the Defendants that the Policy

provides no coverage for the claims asserted against them in the Berger Action.

## CONTROVERSY AND RIPENESS

16.     There is an actual, ripe and live controversy between the parties regarding their

respective rights and obligations under the Policy for loss in connection with the Berger Action.

## COUNT I

### Genesis is Entitled to Declaratory Relief
### Based on the Insured v. Insured Exclusion

17.     Genesis repeats and incorporates by reference the allegations in paragraphs 1

through 16 of this Complaint.

18.     The Policy excludes from coverage any Claim made against the Directors or

Officers of FAR:

> [b]y or at the behest of the COMPANY, or any affiliate of the COMPANY or any
> DIRECTOR or OFFICER, or by any security holder of the COMPANY, whether
> directly or derivatively, unless such CLAIM is instigated and continued totally
> independent of, and totally without the solicitation of, or assistance of, or active
> participation of, or intervention of, any DIRECTOR or OFFICER or the
> COMPANY or any affiliate of the COMPANY . . . .

Policy Section IV.(K), as amended.

19.     The claims asserted in the Berger Action are claims originally belonging to FAR.

As the Chapter 7 Trustee for the FAR bankruptcy estate, the Trustee stands in the shoes of FAR

in asserting those claims. Accordingly, Genesis is entitled to a declaration that coverage is not

available under the Policy for the Berger Action by operation of Policy Section IV.(K).

## COUNT II

### Genesis is Entitled to Declaratory Relief
### Based on Additional Terms of the Policy

20.     Genesis repeats and incorporates by reference the allegations in paragraphs 1 through 16 of this Complaint.

21.     Other terms and conditions of the Policy may operate to bar or limit coverage for the Berger Action as to some or all of the Defendants, including, *inter alia*, the following.

22.     The Policy provides coverage, subject to all of its terms and conditions, only for "Loss" sustained by the insureds, as that term is defined in the Policy.  Policy Section II.(F) provides, among other things, that "Loss shall not include . . . any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed."

23.     In the Berger Action, the Trustee seeks recovery of an allegedly fraudulent transfer of property – i.e., the return of all outstanding shares of DSNG – or, in the alternative, restitution or disgorgement of the value of the DSNG stock.  Neither the return of fraudulently transferred property nor the restitution or disgorgement of its value constitute a covered Loss as defined in the Policy.  Moreover, to the extent there is any merit to the allegations in the Berger Action, the Defendants can avoid any and all loss allegedly sustained by the Trustee simply by agreeing to return the disputed DSNG stock to the Trustee in exchange for the consideration paid for it by Harper.

24.     Accordingly, Genesis is entitled to a declartion that coverage is barred or limited under the Policy for the Berger Action by operation of the Policy's definition of covered Loss.

25.     The Policy excludes from coverage any claim made against the Directors or Officers of FAR "[a]rising out of, based upon or attributable to the DIRECTORS or OFFICERS or the COMPANY gaining in fact any profit or advantage to which they were not legally entitled."  Policy Section IV.(B), as amended.

240944v1                          - 5 -

26.     The Policy excludes from coverage any claim made against the Directors or Officers of FAR "[a]rising out of, based upon, brought about or contributed to by the committing in fact of fraudulent, dishonest or criminal acts by the DIRECTORS of OFFICERS . . . ." Policy Section IV.(D), as amended.

27.     The Policy further provides that "THE WRONGFUL ACT OF ANY DIRCTOR, OFFICER OR THE COMPANY SHALL NOT BE IMPUTED TO ANY OTHER DIRECTOR OR OFFICER FOR THE PURPOSE OF DETERMINING THE APPLICABILITY OF EXCLUSIONS B., C., D. AND I." Policy Section IV, as amended.

28.     The Berger Action alleges that certain Defendants gained profit or advantage to which they were not legally entitled, and that certain Defendants engaged in fraudulent and/or dishonest acts.

29.     Accordingly. Genesis is entitled to a declaration that coverage is barred or limited under the Policy for the Berger Action by operation of Policy Sections IV.(B) and (D), as amended.

30.     The Policy does not provide coverage for any Loss arising from alleged acts, omissions or errors of any Defendant that was not committed in the Defendant's capacity as a Director or Officer of FAR.  On information and belief, defendant Jacobs was not a Director or Officer of FAR during the time period at issue in the Berger Action.

31.     Accordingly. Genesis is entitled to a declaration that coverage is not available under the Policy for the claims asserted against Mr. Jacobs in the Berger Action.

32.     The Policy does not provide coverage for any Loss incurred by the FAR Directors and Officers in their capacity as directors and officers of entities other than FAR or its covered subsidiaries.

33.     Accordingly, Genesis is entitled to a declaration that coverage is not available under the Policy for the Berger Action with respect to any acts undertaken by any of the FAR Directors and Officers in any capacity other than as Directors and Officers of FAR.

WHEREFORE, plaintiff Genesis requests that the Court enter judgment in its favor:

A.     On Count I, a judicial declaration that Genesis has no obligation to indemnify the Defendants in connection with the Berger action as a result of the Policy's Insured v. Insured Exclusion, Policy Section IV (K);

B.     On Count II, a judicial declaration that coverage for the Berger Action is barred or limited pursuant to additional terms and conditions of the Policy; and

C.     Awarding Genesis such additional declaratory and other relief as shall be found to be appropriate in the circumstances.

Dated: November 30th, 2000

Respectfully submitted,

STEPHENS LYNN KLEIN, P.A.
Gregory S. Glasser
Florida Bar No. 0014702
Two Datran Center
9130 South Dadeland Boulevard
Miami, Florida 33156
(305) 670-3700

COUNSEL FOR PLAINTIFF GENESIS
    INSURANCE COMPANY

OF COUNSEL:

**ROSS, DIXON & BELL, L.L.P.**
David M. Gische
John W. Duchelle
601 Pennsylvania Avenue, N.W.
North Building
Washington, D.C. 20004
(202) 662-2000

240944v1                                        -7-



**GENESIS INSURANCE COMPANY**
**STAMFORD, CONNECTICUT  06904**

## COMMERCIAL LINES POLICY

THIS POLICY JACKET WITH THE COMMON DECLARATIONS PAGE, COVERAGE PARTS,
AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THIS POLICY.

EXHIBIT A

*Genesis Ins. Co. v. Harper, et. al.*

# GENESIS   GENESIS INSURANCE COMPANY

**DIRECTORS AND OFFICERS LIABILITY INSURANCE
DECLARATIONS PAGE**

Policy Number: **YXB001117B**

NOTE: **THIS IS A CLAIMS MADE POLICY, PLEASE READ IT CAREFULLY**. AMOUNTS INCURRED AS COST OF DEFENSE SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS AND SHALL ALSO BE APPLIED AGAINST THE RETENTION. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND THOSE INSURED UNDER THIS POLICY.

**THIS IS A CLAIMS MADE POLICY, PLEASE READ IT CAREFULLY**

**ITEM 1.**   Insured................:   **First American Railways, Inc.**
Principal Office.....:   479 Main Avenue
Durango, CO 81301

**ITEM 2.**   Policy Period........:   From: April 29, 1998          To: April 29, 1999
(Both dates at 12:01 a.m. Standard Time at the Address of the COMPANY as stated in ITEM 1.)

**ITEM 3.**   Limit of Liability (Inclusive of COSTS OF DEFENSE):

$   5,000,000   Aggregate Limit of Liability for the Policy Year

**ITEM 4.**   Retentions applicable to Insuring Agreements:

$          0   Each DIRECTOR or OFFICER each CLAIM, but in no event exceeding
$          0   Each CLAIM all DIRECTORS and OFFICERS under Insuring Agreement, Section I A.
$     75,000   Each CLAIM under Company Reimbursement Insuring Agreement, Section I B.

**ITEM 5.**   Premium:
$     68,000   One year pre-paid premium.

**ITEM 6.**   Premium for DISCOVERY PERIOD:

75% of the Premium in Item 5 above, as provided in Section III, to be paid only if the eligibility requirements are met and the DISCOVERY PERIOD option is properly exercised

**ITEM 7.**   Endorsements:

This Policy is subject to the terms of the following endorsements attached hereto and incorporated herein by reference at the effective date of this Policy and to all other endorsements attached hereto after the effective date of this Policy: 7418 (08/93), 7422, 7425.7600ENH, 7444, 7460, 7473.CO, 7474.CO, 7480.CO, 7481.CO.

**ITEM 8.**   Notices:

All Notices required to be given to the INSURER under this Policy shall be addressed to Genesis Insurance Company, 25550 Chagrin Boulevard, Suite 300, Beachwood, Ohio 44122.

These Declarations along with the completed and signed Application, including attachments, and the DIRECTORS and OFFICERS Liability Insurance Policy including Company Reimbursement, shall constitute the contract between the DIRECTORS and OFFICERS, the COMPANY and GENESIS INSURANCE COMPANY.

Date: May 4, 1998                                          By:   *Michael Zartman*

Company Officer or Authorized Agent

FORM NO. GIC-7417 (08/93)

**GENESIS** GENESIS INSURANCE COMPANY

(herein called the INSURER)

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

### THIS IS A CLAIMS MADE POLICY, PLEASE READ IT CAREFULLY

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to Genesis Insurance Company, including the statements made in the Declarations and Application and subject to all terms, conditions and limitations of this Policy, the INSURER agrees:

**SECTION I. INSURING AGREEMENTS**

A. With the DIRECTORS and OFFICERS of the COMPANY that if, during the POLICY PERIOD or the DISCOVERY PERIOD, any CLAIM is first made against the DIRECTORS or OFFICERS, individually or collectively, for a WRONGFUL ACT, the INSURER will pay on behalf of the DIRECTORS or OFFICERS, all LOSS in excess of the applicable Retention amount stated in Item 4 of the Declarations, which the DIRECTORS or OFFICERS shall be legally obligated to pay, except for such LOSS which the COMPANY actually pays as indemnification.

B. With the COMPANY, that if during the POLICY PERIOD or the DISCOVERY PERIOD, any CLAIM is first made against the DIRECTORS or OFFICERS, individually or collectively, for a WRONGFUL ACT, the INSURER will reimburse the COMPANY for all LOSS in excess of the applicable Retention amount stated in Item 4 of the Declarations which the COMPANY is required to indemnify, or for which the COMPANY has to the extent permitted by law indemnified the DIRECTORS or OFFICERS.

**SECTION II. DEFINITIONS**

A. "COMPANY" shall mean the entity named in Item 1 of the Declarations and any SUBSIDIARY as defined in Section II B which is legally constituted at the inception date of this Policy.

B. "SUBSIDIARY" shall mean:

   (1) Any entity more than 50% of whose outstanding securities representing the present right to vote for the election of Directors are owned by the entity named in Item 1 of the Declarations and/or one or more of its Subsidiaries at the inception date of this Policy, or of any Policy issued by the INSURER of which this Policy is a renewal thereof; or

   (2) Any entity which is acquired or created subsequent to the effective date of this Policy in which more than 50% of whose outstanding securities representing the present right to vote for the election of Directors are owned by the entity named in Item 1 of the Declarations and/or one or more of its Subsidiaries, subject, however, to the provisions of Section VIII(E).

   The term "SUBSIDIARY" shall include any Subsidiary of any Subsidiary.

C. "DIRECTORS" and "OFFICERS" shall mean all persons who were, now are, or shall be duly elected Directors or duly elected or appointed Officers of the COMPANY, including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

D. "WRONGFUL ACT" shall mean any actual or alleged negligent act, omission or error, including but not limited to, any negligent misstatement, misleading statement, neglect or breach of duty by the DIRECTORS or

1

OFFICERS in the discharge of their duties solely in their capacity as DIRECTORS or OFFICERS of the COMPANY, individually or collectively

E.   "INTERRELATED WRONGFUL ACTS" shall mean WRONGFUL ACTS which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

F.   "LOSS" shall mean any amount which the DIRECTORS or OFFICERS are legally obligated to pay or for which the COMPANY is required to indemnify the DIRECTORS or OFFICERS, or for which the COMPANY has, to the extent permitted by law, indemnified the DIRECTORS or OFFICERS, for a CLAIM or CLAIMS made against the DIRECTORS or OFFICERS for WRONGFUL ACTS, and shall include damages, judgements, settlements, and COST OF DEFENSE, provided always, however, LOSS shall not include criminal or civil fines or penalties imposed by law, punitive or exemplary damages or any multiplied portion of a damage award in excess of actual damages, taxes, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

G.   "COST OF DEFENSE" shall mean reasonable and necessary legal fees and expenses incurred in the investigation and/or defense of any CLAIM and appeals therefrom, and cost of attachment or similar bonds; provided, however, COST OF DEFENSE shall not include salaries, wages, overhead or benefit expenses associated with DIRECTORS, OFFICERS or employees of the COMPANY.

H.   "POLICY YEAR" shall mean the period of one year following the effective date and hour of this Policy or the period of one year following any anniversary date thereof falling within the POLICY PERIOD; or if the time between the effective date or any anniversary date and the termination of this Policy is less than one year, such lesser period. If the DISCOVERY PERIOD is exercised in accordance with Section III, then such period shall be deemed part of and not in addition to the last POLICY YEAR.

I.   "POLICY PERIOD" shall mean the period from the inception date of this Policy to the Policy expiration date stated in Item 2 of the Declarations, or its earlier termination, if any.

J.   "CLAIM" shall mean any civil proceeding initiated against a DIRECTOR or OFFICER before any governmental body which is legally authorized to render an enforceable judgment or order for money damages or other relief against such DIRECTOR or OFFICER and shall include any appeal from such proceeding.

**SECTION III.  DISCOVERY PERIOD**

A.   If the INSURER cancels this Policy pursuant to Section VIII A (2), or in the event the INSURER refuses to renew this Policy, for any reason other than the COMPANY'S non-payment of premium or non-compliance with the terms and conditions of this Policy, then the entity named in Item 1 of the Declarations on behalf of the DIRECTORS and OFFICERS shall have the right, upon payment of an additional premium calculated as provided in Item 6 of the Declarations to an extension of the coverage granted by this Policy with respect to any CLAIM first made against the DIRECTORS or OFFICERS during the period of ninety (90) days after the effective date of such cancellation or, in the event of such refusal to renew, after the date upon which the POLICY PERIOD ends, but only with respect to WRONGFUL ACT committed before such date and otherwise covered by this Policy. This ninety (90) day period shall be referred to in this Policy as the DISCOVERY PERIOD.

B.   A renewal quotation by the INSURER incorporating different terms, conditions and/or premium with respect to the coverage afforded by this Policy shall not be deemed to constitute a cancellation or refusal to renew by the INSURER for the purpose of determining the right to purchase the DISCOVERY PERIOD.

C.   In the event of renewal on terms and conditions different from those in effect during the POLICY PERIOD, the COMPANY shall have the right, upon payment of an additional premium to be determined by the INSURER, to an extension of the original terms and conditions with respect to any CLAIM first made against any DIRECTOR or OFFICER during the period of ninety (90) days after the effective date of renewal, but only with respect to any WRONGFUL ACT committed prior to the effective date of the renewal. This right of extension shall

2

terminate unless written notice of such election is received by the INSURER within ten (10) days after the effective date of renewal.

D    As a condition precedent to the right to purchase the DISCOVERY PERIOD, the total premium for this Policy must have been paid. The right to purchase the DISCOVERY PERIOD shall terminate unless a written request for the DISCOVERY PERIOD is given to the INSURER within ten (10) days after the effective date of cancellation, or, in the event of a refusal to renew, within ten (10) days after the POLICY PERIOD ends, together with payment of the appropriate premium for the DISCOVERY PERIOD. In the event that such written request and premium paid is not so given to the INSURER, there shall be no right to purchase the DISCOVERY PERIOD at any later date.

E.   The fact that this Policy may be extended by virtue of the purchase of the DISCOVERY PERIOD shall not in any way increase the Limit of Liability stated in Item 3 of the Declarations. For purposes of the Limit of Liability, the DISCOVERY PERIOD is considered to be part of and not in addition to the last POLICY YEAR.

F.   The DISCOVERY PERIOD shall only apply to CLAIMS first made against the DIRECTORS or OFFICERS during said DISCOVERY PERIOD.

G.   In the event of the purchase of the DISCOVERY PERIOD, the entire premium therefore shall be deemed earned at its commencement. If the DISCOVERY PERIOD is terminated before its full term for any reason the INSURER shall not be liable to return any portion of the premium paid for the DISCOVERY PERIOD. Notwithstanding the foregoing, if the DISCOVERY PERIOD is terminated before completion of its full term pursuant to Section III H, the INSURER shall return the pro rate unearned premium to the INSURED.

H.   If the DISCOVERY PERIOD is purchased, it shall terminate immediately on the effective date of any contract of insurance or indemnity which replaces the coverage afforded by this Policy through the DISCOVERY PERIOD either in whole or in part.

**SECTION IV.  EXCLUSIONS**

The INSURER shall not be liable to make any payment for LOSS in connection with any CLAIM made against the DIRECTORS or OFFICERS:

A.   Alleging, arising out of, based upon or attributable to any attempt, whether successful or unsuccessful, by any person or entity to acquire securities of the COMPANY against the opposition of the Board of Directors of the COMPANY ("BOARD"), or any action, whether successful or unsuccessful, by the COMPANY or the BOARD to resist such attempts; however, this exclusion shall not apply if, before taking any such resistive action, the COMPANY or the BOARD has obtained written opinion (1) from independent legal counsel that such resistive action is a lawful exercise of the BOARD'S business judgement and (2) from an independent investment banking firm that the offer for the securities of the COMPANY is inadequate, and that any financial transaction approved by the BOARD which is resistive of such acquisition is fair to the COMPANY and its shareholders;

B.   Based upon or attributable to the DIRECTORS or OFFICERS gaining in fact any profit or advantage to which they were not legally entitled;

C.   For return by the DIRECTORS or OFFICERS of any remuneration paid to the DIRECTORS or OFFICERS without the previous approval of the governing bodies of the COMPANY, which payment, without such previous approval, shall be held to be in violation of law;

D.   Brought about or contributed to by the fraudulent, dishonest or criminal acts of the DIRECTORS or OFFICERS;

E.   Which is insured in whole or in part by another valid policy or policies, regardless of whether or not any LOSS in connection with such CLAIM is collectible or recoverable under such other policy or policies, provided, however, this Exclusion E shall not apply with respect to any excess beyond the amount or amounts of coverage under such other policy or policies whether such other policy or policies are stated to be primary,

3

contributory, excess or otherwise, where such CLAIM is otherwise covered by the terms and provisions of this Policy;

F. Arising out of or in any way involving (1) any WRONGFUL ACT, or any fact, circumstance or situation which has been the subject of any notice given prior to the effective date of this Policy under any insurance policy providing protection for the DIRECTORS or OFFICERS, including any matter in any way related thereto; or (2) any other WRONGFUL ACT which, together with a WRONGFUL ACT which has been subject of such notice described in the preceding clause, would constitute INTERRELATED WRONGFUL ACTS;

G. Arising out of or in any way involving actual or alleged: (1) bodily injury, sickness, disease, or death of any person, assault, battery, mental anguish, emotional distress, loss of consortium, or ethnic, sexual, racial, religious, disability, age or other discrimination or harassment; or (2) damage to or destruction of any tangible property including loss of use thereof; or (3) invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, defamation or false light, libel or slander;

H. Arising out of or in any way involving any pension, profit sharing or employee benefit program established in whole or in part for the benefit of any of the DIRECTORS, OFFICERS or employees of the COMPANY, or based upon, arising out of or in any way involving the Employee Retirement Income Security Act of 1974 (or any regulations promulgated thereunder) or similar provisions of any federal, state or local statutory law or common law;

I. For any actual or alleged WRONGFUL ACT in the discharge of their duties as a Director or Officer of any entity other than the COMPANY, even if directed or requested to serve as a Director or Officer of such other entity, except where this Policy has been specifically endorsed providing such extension of coverage;

J. Based upon, arising out of, attributable to or in any way involving, directly or indirectly:

(1) the actual, alleged or threatened discharge, disposal, migration, dispersal, release or escape of pollutants, or

(2) any direction, order or request to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize pollutants, or to pay for or contribute to the costs of undertaking such actions including claims alleging damage to the COMPANY or its shareholders.

Pollutants includes (but is not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, organisms or other hazardous substances, and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

K. By or at the behest of the COMPANY, or any affiliate of the COMPANY or any DIRECTOR or OFFICER, or by any security holder of the COMPANY, whether directly or derivatively, unless such CLAIM is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any DIRECTOR or OFFICER or the COMPANY or any affiliate of the COMPANY; provided, however, this exclusion shall not apply to wrongful termination of employment claims brought by a former employee other than a former employee who is or was a DIRECTOR of the COMPANY;

L. For an accounting of profits in fact made from the purchase and sale or sale and purchase by the DIRECTORS or OFFICERS of securities of the COMPANY within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law or common law;

M. Arising out of or in any way involving any actual or alleged failure to effect or maintain any policy of insurance;

N. Of any SUBSIDIARY arising out of or in any way involving, (1) any WRONGFUL ACT occurring prior to the date such entity became a SUBSIDIARY, or (2) any WRONGFUL ACT occurring subsequent to the date such entity became a SUBSIDIARY which, together with a WRONGFUL ACT occurring prior to the date such entity became a SUBSIDIARY, constitute INTERRELATED WRONGFUL ACTS.

**NOTE: THE WRONGFUL ACT OF ANY DIRECTOR OR OFFICER SHALL NOT BE IMPUTED TO ANY OTHER DIRECTORS OR OFFICERS FOR THE PURPOSE OF DETERMINING THE APPLICABILITY OF EXCLUSION B, C AND D.**

4

### SECTION V.  LIMIT OF LIABILITY

A.  The INSURER shall be liable to pay one hundred percent (100%) of LOSS in excess of the applicable Retention amount stated in Item 4 of the Declarations up to the Limit of Liability stated in Item 3 of the Declarations.

B.  CLAIMS based upon or arising out of the same WRONGFUL ACT or fact, circumstance or situation, or any INTERRELATED WRONGFUL ACT, or fact, circumstance or situation, or one or more series of any similar, repeated or continuous WRONGFUL ACTS, of one or more of the DIRECTORS or OFFICERS, shall be considered a single CLAIM and only one Retention and Limit of Liability shall be applicable to such single CLAIM; provided, however, that each such single CLAIM shall be deemed to fall within the POLICY YEAR in which the earliest CLAIM arising out of such WRONGFUL ACT or fact, circumstance or situation, or one or more series of any similar, repeated or continuous WRONGFUL ACTS is first made, or within the POLICY YEAR in which notice pursuant to Section VII A is given, whichever occurs first.  In the event that more than one DIRECTOR or OFFICER is included in the same CLAIM, the total amount of such CLAIM and the Retention shall be apportioned pro-rata among the DIRECTORS and OFFICERS in proportion to their respective LOSS unless otherwise mutually agreed upon by the DIRECTORS and OFFICERS and the INSURER.

C.  One Retention amount shall apply to each and every CLAIM.  In the event a single CLAIM is covered under more than one Insuring Agreement, the Retention stated in Item 4 of the Declarations shall be applied separately to the part of the CLAIM covered by each Insuring Agreement and the sum of the Retentions so applied shall constitute the Retention for each single CLAIM, provided however, the total Retention as finally determined shall in no event exceed the largest of the applicable Retentions.  Notwithstanding the aforementioned, for the purposes of the application of the Retention, any LOSS applicable to the Company Reimbursement, Insuring Agreement Section I B, includes that for which indemnification by the COMPANY is legally permissible whether or not actual indemnification is granted and the COMPANY shall be presumed to have in effect in its By-Laws the broadest possible indemnification provisions permitted under the applicable laws.

D.  COSTS OF DEFENSE shall be part of and not in addition to the Limit of Liability stated in Item 3 of the Declarations, and such COSTS OF DEFENSE shall reduce the Limit of Liability stated in Item 3 of the Declarations and shall also be applied against the Retention.

E.  Subject to the foregoing, the INSURER'S liability for all LOSS including COSTS OF DEFENSE shall be the amount shown in Item 3 of the Declarations, and shall be the maximum aggregate Limit of Liability of the INSURER in the POLICY YEAR for all CLAIMS made against the DIRECTORS and OFFICERS, regardless of the time of payment by the INSURER.

### SECTION VI.  COSTS OF DEFENSE AND SETTLEMENTS

A.  The DIRECTORS or OFFICERS shall not admit liability for, or settle, any CLAIM or incur COSTS OF DEFENSE, in connection with any CLAIM, without the INSURER'S prior written consent, which consent shall not be unreasonably withheld.  The INSURER shall be entitled to full information and all particulars it may request in order to reach a decision as to such consent.  Any COSTS OF DEFENSE incurred, and/or settlements agreed to prior the INSURER'S consent thereto shall not be covered hereunder.  In the event of such consent being given, and subject to all other terms and provisions of this Policy, including but not limited to Section V  D of this Policy, the INSURER shall reimburse COSTS OF DEFENSE only upon the final disposition of any CLAIM made against the DIRECTORS or OFFICERS.

B.  Notwithstanding the provisions of Paragraph A hereinabove, the INSURER at its sole option and discretion may advance COSTS OF DEFENSE on behalf of the DIRECTORS and OFFICERS, incurred by the DIRECTORS and OFFICERS in connection with any CLAIM made against them, prior to the final disposition of

5

any such CLAIMS. Any agreement by the INSURER to advance COSTS OF DEFENSE shall be on the condition that:

    (1)  The DIRECTORS and OFFICERS provide a written undertaking satisfactory to the INSURER providing that in the event it is finally established that the INSURER has no liability under the Policy to the DIRECTORS and OFFICERS, or any of them, for such CLAIM, such DIRECTORS and OFFICERS agree to repay to the INSURER upon demand all COSTS OF DEFENSE advanced on their behalf by virtue of this provision,

    (2)  The DIRECTORS and OFFICERS provide security for such written undertaking satisfactory to the INSURER; and

    (3)  Any COSTS OF DEFENSE advanced by the INSURER shall reduce the Limit of Liability for such CLAIM to the extent that they are not in fact repaid to the INSURER in accordance with (1) hereinabove.

C.  It shall be the duty of the DIRECTORS and OFFICERS and not the duty of the INSURER to defend CLAIMS, provided that the DIRECTORS or OFFICERS shall only retain counsel as is mutually agreed upon with the INSURER.

The INSURER shall at all times have the right, but not the duty, to associate with the DIRECTORS or OFFICERS in the investigation, defense or settlement of any CLAIM to which this Policy may apply. The COMPANY and the DIRECTORS and OFFICERS shall provide the INSURER with such information, assistance and cooperation as the INSURER may reasonably request.

**SECTION VII. NOTICE OF CLAIM**

A.  The DIRECTORS or OFFICERS shall, as a condition precedent to their rights under this Policy, give the INSURER notice in writing, as soon as practicable of any CLAIM first made against the DIRECTORS or OFFICERS during the POLICY PERIOD or DISCOVERY PERIOD, but in no event later than thirty (30) days after such CLAIM is made, and shall give the INSURER such information and cooperation as the INSURER may reasonably require.

B.  If prior to the effective date of the cancellation of this Policy in the event of its cancellation by the INSURER pursuant to the provisions of Section VIII (A) (2), or if prior to the expiration date of this Policy stated in Item 2 of the Declarations in the event of its non-renewal by the INSURER pursuant to the provisions of Section VIII (A) (4) and prior to the inception of the DISCOVERY PERIOD, the DIRECTORS or OFFICERS of the COMPANY first become aware of any circumstances which may subsequently give rise to a CLAIM being made against the INSURED, and the DIRECTORS or OFFICERS as soon as practicable, but in no event later than thirty (30) days from the date of such first awareness, give written and specific notice to the INSURER of the circumstances and the reasons for anticipating a CLAIM, then any CLAIM subsequently made against the DIRECTORS or OFFICERS arising directly out of such circumstances as specifically noticed shall be deemed for the purposes of this Policy to have been made during the POLICY YEAR in which such notice was given; provided, however, that as a condition precedent for any coverage to arise hereunder:

    (1)  Such notice must be received by the INSURER prior to the effective date of the cancellation of the Policy, or in the case of non-renewal by the INSURER, prior to the expiration date of this Policy stated in Item 2 of the Declarations; and

    (2)  Such notice must be specific and contain full particulars as to the circumstances potentially giving rise to the CLAIM, including a narrative setting forth dates, names of the potential plaintiffs and affected DIRECTORS or OFFICERS, names of other persons involved, the nature and scope of the anticipated CLAIM, and all reasons why such a CLAIM is reasonably to be anticipated.

C.  In addition to furnishing the notice as provided in Section VII A and VII B, the DIRECTORS or OFFICERS shall, as soon as practicable, furnish the INSURER with copies of reports, investigations, pleadings and all information requested by the INSURER in connection therewith.

D.  The INSURER shall have the right but not the obligation to make any investigation it deems expedient and with the consent of the INSURED against whom the CLAIM has been made or the COMPANY on behalf of the INSURED, make settlement within the available Limit of Liability (whether above or below the applicable Retention). If the INSURED, or the COMPANY on behalf of the INSURED, shall refuse to consent to any settlement recommended by the INSURER and shall act to contest or continue any actions or proceedings in connection with such CLAIM, then, subject to the available Limit of Liability and the applicable Retention, the INSURER'S liability for all LOSS in connection with such CLAIM shall not exceed the amount for which the CLAIM could have been settled, plus the reasonable COST OF DEFENSE incurred with the INSURER'S consent up to the date of refusal to consent by the INSURED and/or the COMPANY.

E.  Notice to the INSURER as provided in Section VII A and VII B, and any information furnished to the INSURER as provided in Section VII C shall be given to GENESIS INSURANCE COMPANY, CLAIMS DEPARTMENT, 25550 CHAGRIN BLVD. SUITE 300, BEACHWOOD, OHIO 44122.

---

**SECTION VIII. GENERAL CONDITIONS**

---

### A. CANCELLATION OR NON-RENEWAL

(1)  By acceptance of this Policy, the COMPANY and the DIRECTORS and OFFICERS hereby confer the exclusive power and authority to cancel this Policy on their behalf to the entity named in Item 1 of the DECLARATIONS. Such entity may cancel this Policy by surrender thereof to the INSURER, or by mailing to the INSURER written notice stating when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the POLICY PERIOD. Delivery of such written notice shall be equivalent to mailing.

(2)  This Policy may be canceled by the INSURER by mailing to the entity named in Item 1 of the DECLARATIONS written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the POLICY PERIOD. Delivery of such written notice by the INSURER shall be equivalent to mailing.

(3)  If this Policy shall be cancelled by the entity named in Item 1 of the DECLARATIONS, the INSURER shall retain the customary short rate portion of the premium. If this Policy shall be cancelled by or on behalf of the INSURER, the INSURER shall retain the pro-rata portion of the premium. Payment or tender of any unearned premium by the INSURER shall not be a condition precedent to the effectiveness of cancellations, but such payment shall be made as soon as practicable.

(4)  If the INSURER elects not to renew this Policy, the INSURER shall provide the entity named in Item 1 of the DECLARATIONS with no less than thirty (30) days advance notice thereof.

(5)  If the period of limitation relating to the giving of notice as provided for in Section VIII A (2) or VIII A (4) is prohibited or made void by any law controlling the construction thereof, such period shall be amended so as to be equal to the minimum period of limitation permitted by such law.

### B. TERMINATION

This Policy shall be deemed terminated immediately upon the happening of any of the following events:

(1)  The acquisition of the entity named in Item 1 of the Declarations by another entity, or the merger of the entity named in Item 1 of the Declarations into another entity such that the entity named in Item 1 of the Declarations is not the surviving entity, or the consolidation of the entity named in Item 1 of the Declarations with another entity, or the acquisition of substantially all of the assets of the entity named in Item 1 of the Declarations by another entity, or

(2)  The appointment of a receiver, conservator, trustee, liquidator, or rehabilitator, or any similar official for or with respect to the entity named in Item 1 of the Declarations.

If this Policy shall be terminated, the INSURER shall retain the pro rata portion of the premium. Payment or tender of any unearned premium by the INSURER shall not be a condition precedent to the effectiveness of terminations, but such payment shall be made as soon as practicable.

## C. WARRANTY

It is agreed and warranted that the particulars and statements contained in the application for this Policy or contained in any Application for any Policy issued by the INSURER of which this Policy is a renewal thereof (any such Applications collectively referred to as the "APPLICATION"), a copy of which is attached hereto, and any material submitted therewith (which shall be on file with the INSURER and be deemed attached hereto, as if physically attached hereto), are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy.

By acceptance of this Policy the DIRECTORS and OFFICERS and the COMPANY agree:

(1)  That the statements in the Application or in any materials submitted therewith are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the INSURER under this Policy, and that this Policy is issued in reliance upon the truth of such representations;

(2)  That in the event that the Application, including materials submitted therewith, contains misrepresentations made with the actual intent to deceive, or contain misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the INSURER under this Policy, this Policy in its entirety shall be void and of no effect whatsoever; and provided, however, that except for material facts or circumstances known to the person(s) who signed the Application, any misstatement or omission in such Application or materials submitted therewith in respect of a specific WRONGFUL ACT by a particular DIRECTOR or OFFICER or his cognizance of any matter which he has reason to suppose might afford grounds for a future claim against him shall not be imputed to any other DIRECTOR or OFFICER for purposes of determining the validity of this Policy as to such other DIRECTOR or OFFICER; and

(3)  That this Policy shall be deemed to be a single unitary contract and not a severable contract of insurance or a series of individual contracts of insurance with each of the DIRECTORS and OFFICERS.

## D. ACTION AGAINST THE INSURER

(1)  No action shall be taken against the INSURER unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, and until the DIRECTORS' or OFFICERS' obligation to pay shall have been finally determined, either by an adjudication against the DIRECTORS or OFFICERS or by written agreement of the DIRECTORS or OFFICERS, claimant and the INSURER.

(2)  No person or organization shall have any right under this Policy to join the INSURER as a party to any CLAIM against the DIRECTORS or OFFICERS nor shall the INSURER be impleaded by the DIRECTORS or OFFICERS or their legal representative in any such CLAIM.

## E. ACQUISITIONS, MERGERS AND SUBSIDIARIES

(1)  In the event the COMPANY acquires another entity or acquires substantially all of the assets of another entity, or merges with another entity such that said COMPANY is the surviving entity, or creates or acquires a SUBSIDIARY, after the inception of this Policy, no coverage shall be afforded under this Policy for any LOSS in any way involving the assets or entity acquired or the assets, liabilities, Directors, Officers or employees of the entity acquired or merged with, or such SUBSIDIARY unless and until:

(a)  The entity named in Item 1 of the Declarations provides written notice of such transaction or event to the INSURER thirty (30) days prior to the effective date of such transaction or event;

8

(b) The entity named in Item 1 of the Declarations provides the INSURER with such information in connection therewith as the INSURER may deem necessary,

(c) The entity named in Item 1 of the Declarations accepts any special terms, conditions, exclusions or additional premium charge required by the INSURER; and

(d) The INSURER, at its sole discretion, specifically agrees in writing to provide such coverage.

(2) In the event that all of the conditions stated in Paragraph (1) hereinabove are met, such coverage as may be afforded under this Policy for an LOSS in any way involving the assets or entity acquired or the assets, liabilities, Directors or Officers of the entity merged with or of such SUBSIDIARY shall not apply to any CLAIM based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

(a) Any WRONGFUL ACT or any fact, circumstance or situation committed or allegedly committed prior to the effective date of such acquisition, merger or creation; or

(b) Any other WRONGFUL ACT which, together with a WRONGFUL ACT committed or allegedly committed prior to the effective date of such acquisition, merger or creation, constitute INTERRELATED WRONGFUL ACTS.

(3) In the event of sale or dissolution of any SUBSIDIARY after the inception date of this Policy or of any Policy issued the INSURER of which this Policy is a renewal thereof, this Policy, subject to its terms, shall continue to apply to all persons who were DIRECTORS or OFFICERS of such SUBSIDIARY with respect to CLAIMS first made during the POLICY PERIOD or the DISCOVERY PERIOD against such DIRECTORS or OFFICERS for WRONGFUL ACTS committed or allegedly committed prior to the time of sale or dissolution. In the event of sale, there shall be no coverage for CLAIMS made against the DIRECTORS or OFFICERS of such SUBSIDIARY based on WRONGFUL ACTS committed or allegedly committed subsequent to the sale.

## F. SUBROGATION

In the event of any payment under this Policy, the INSURER shall be subrogated to all of the DIRECTORS' or OFFICERS' and the COMPANY'S rights to recovery thereof, and the DIRECTORS or OFFICERS and the COMPANY shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents as may be necessary to enable the INSURER to effectively bring suit in the name of any DIRECTOR or OFFICER or the COMPANY.

## G. ASSIGNMENT

Assignment of interest under this Policy shall not bind the INSURER until its consent is endorsed hereon.

## H. CONFORMITY TO STATUTE

Any terms of this Policy which are in conflict with the terms of any applicable laws construing this Policy, are hereby amended to conform to such laws.

## I. ENTIRE AGREEMENT

By acceptance of this Policy, the DIRECTORS, OFFICERS and the INSURER agree that this Policy (including the Application and any materials submitted therewith) and any written endorsements attached thereto constitute the entire agreement between the parties.

## J. AUTHORIZATION

By acceptance of this Policy, the entity named in Item 1 of the Declarations shall act on behalf of the COMPANY and all the DIRECTORS and OFFICERS for all purposes including, but not limited to, giving and

receiving of all notices and correspondence, the cancellation or non-renewal of this Policy, the payment of premiums, and the receipt of any return premiums that may be due under this Policy.

## K. CHANGES

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the INSURER shall not effect a waiver or a change in any part of this Policy or stop the INSURER from asserting any right under the terms of this Policy, nor shall the terms of this Policy be waived or changed, except by written endorsement or rider issued to form a part of this Policy.

## L. CONSTRUCTION OF POLICY

The terms of this Policy are to be construed in an evenhanded fashion as between the DIRECTORS, OFFICERS or COMPANY and the INSURER in accordance with the laws of the jurisdiction in which the situation forming the basis for this controversy arose. Where the language of this Policy is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in a manner most consistent with the relevant terms of the Policy without regard to authorship of the language and without any presumption or arbitrary interpretation or construction in favor of either the DIRECTORS, OFFICERS or COMPANY or the INSURER.

## M. FINANCIAL REPORTING

It is hereby understood and agreed that the COMPANY shall submit to Genesis Insurance Company, 25550 Chagrin Blvd. Suite 300, Beachwood, Ohio 44122 as such becomes available, copies of each Annual Report, Form 10-K, Interim Financial Report or any press release which the COMPANY issues, along with any proxy material or other information that may be requested by the INSURER depicting either the financial condition, the organizational structure or the management of the COMPANY.

GENESIS INSURANCE COMPANY

FORM GIC-7418 (8/93)

# GENESIS   GENESIS INSURANCE COMPANY

## ADDITION TO SECTION IV EXCLUSIONS

Policy Number: **YXB001117B**

It is understood and agreed that Section IV. of the Policy is hereby amended by the addition of the following exclusions (O) and (P) to said Section:

(O)   Arising from or in any way involving any pending or prior litigation or administrative proceeding as of April 29, 1996, as well as all future claims or litigation based upon the pending or prior litigation or derived from the same or essentially the same facts (actual or alleged) that gave rise to the prior or pending litigation.

(P)   Based upon, arising out of or in any way involving any conflict of interest involving Thomas Radar, RRI and the Company

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Date: May 4, 1998                                    By:   *Michael Zartman*

Company Officer or Authorized Agent

Form No. GIC-7422 (08/93)

# GENESIS GENESIS INSURANCE COMPANY

ADDITION TO SECTION VIII.
GENERAL CONDITIONS
**ENTITY COVERAGE FOR SECURITIES-RELATED CLAIMS**

Policy Number: **YXB001117B**

It is hereby understood and agreed that Section VIII. of the Policy is amended by the addition of the following paragraphs N., O. and P.:

## N.  ENHANCEMENTS, INCLUDING ENTITY COVERAGE FOR PROSPECTUS AND OPEN MARKET SECURITIES CLAIMS

(1) It is hereby understood and agreed that Item 4. of the DECLARATIONS is amended as follows

Item 4. Retentions Applicable to Insuring Agreement.

A.  SECURITIES CLAIM

I    COSTS OF DEFENSE  (Subject to Section V. F.)

$    0    Each DIRECTOR or OFFICER each SECURITIES CLAIM, but in no event exceeding

$    0    Each SECURITIES CLAIM all DIRECTORS and OFFICERS under Insuring Agreement Section I. A.

$ 150,000  Each SECURITIES CLAIM under Company Reimbursement Insuring Agreement Sections I. B. and I. C.

II.  SETTLEMENTS AND JUDGMENTS

$ NONE    Settlements and Judgments in each SECURITIES CLAIM

B.  OTHER CLAIMS

$    0    Each DIRECTOR or OFFICER each CLAIM, but in no event exceeding

$    0    Each CLAIM all DIRECTORS and OFFICERS under Insuring Agreement Section I. A.

$ 75,000  Each CLAIM under Company Reimbursement Insuring Agreement Section I. B.

(2) It is hereby understood and agreed that Section I., under the title "INSURING AGREEMENTS," of this Policy is amended to add the following Insuring Agreement Section I. C.:

C.  With the COMPANY, that if during the POLICY PERIOD or the DISCOVERY PERIOD (if applicable), any SECURITIES CLAIM is first made against the COMPANY for a WRONGFUL ACT, the INSURER will reimburse the COMPANY for all LOSS in excess of the applicable Retention amount stated in Item 4. of the DECLARATIONS, which the COMPANY shall be legally obligated to pay.

(3) It is hereby understood and agreed that Section II., under the title "DEFINITIONS," of this Policy is amended as follows:

A.  For purposes of Sections I. A. and B., "COMPANY," shall mean the entity named in Item 1. of the DECLARATIONS and any SUBSIDIARY as defined in Section II. B., which is legally constituted at the inception date of this Policy. For purposes of Insuring Agreement Section I. C. only, "COMPANY" shall mean the entity in Item 1. of the DECLARATIONS.

B.  "SUBSIDIARY" shall mean:

(1) Any entity more than fifty percent (50%) of whose outstanding securities representing the present right to vote for the election of Directors are owned by the entity named in Item 1. of the DECLARATIONS and/or one or more SUBSIDIARY at the inception date of this Policy, or of any Policy issued by the INSURER of which this Policy is a renewal thereof; or

(2) Any entity which is acquired subsequent to the effective date of this Policy in which more than fifty percent (50%) of whose outstanding securities representing the present right to vote for the election of Directors are owned by the entity named in Item 1. of the DECLARATIONS and/or one or more SUBSIDIARY, subject, however, to the provisions of Section VIII. E.; or

(3) An entity which is created by the entity named in Item 1. of the DECLARATIONS during the POLICY PERIOD which the entity named in Item 1. of the DECLARATIONS owns more than fifty percent (50%) of the issued and outstanding voting stock either directly or indirectly through one or more SUBSIDIARY.

The term "SUBSIDIARY" shall include any Subsidiary of any Subsidiary.

C.  "DIRECTORS" and "OFFICERS" shall mean:

(1) all persons who were, now are, or shall be duly elected Directors or duly elected or appointed Officers of the COMPANY, including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy

(2) any past, present or prospective employee of the COMPANY (other than an individual described in II. C. (1) above), whether such employee is full-time, part-time, seasonal, permanent or temporary and shall include employees in a supervisory, managerial, or subordinate position or otherwise.

Coverage provided to any individual pursuant to II. C. (2) above shall only apply to a SECURITIES CLAIM.

D.  "WRONGFUL ACT" shall mean for purposes of Insuring Agreement Sections I. A. and B. any actual or alleged act, omission, or error, including but not limited to, any misstatement, misleading statement, neglect or breach of duty by the DIRECTORS or OFFICERS in the discharge of their duties in their capacity as DIRECTORS or OFFICERS of the COMPANY, individually or collectively. "WRONGFUL ACT" shall mean for purposes of Insuring Agreement Section I. C. any actual or alleged act or omission, error, misstatement, misleading statement, neglect or breach of duty by the COMPANY, or by persons for whose actual or alleged acts or omissions, errors, misstatements, misleading statements or neglect the COMPANY is legally responsible (including employees acting within the scope of their employment) but only with respect to a SECURITIES CLAIM within the coverage of this Policy.

F.  "LOSS" shall mean any amount which the DIRECTORS or OFFICERS are legally obligated to pay or for which the COMPANY is required to indemnify the DIRECTORS or OFFICERS, or for which the COMPANY has, to the extent permitted by law, indemnified the DIRECTORS or OFFICERS, for a CLAIM(S) or for a SECURITIES CLAIM(S) made against the DIRECTORS or OFFICERS for WRONGFUL ACTS, or any amount which the COMPANY is legally obligated to pay for

WRONGFUL ACTS under Insuring Agreement Section I.C., and shall include damages, judgments, SETTLEMENTS, and COSTS OF DEFENSE, provided always, however, LOSS shall not include criminal or civil fines or penalties imposed by law, punitive or exemplary damages or any multiplied portion of a damage award in excess of actual damages, taxes, any damages arising from any supplement or amendment to a Prospectus or Registration Statement unless such supplement or amendment was submitted to the INSURER before it was used or filed as the case may be, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed. LOSS shall include punitive or exemplary damages (to the extent insurable by law) only with respect to LOSS arising from a SECURITIES CLAIM.

J. "CLAIM" shall mean:

(1) as respects Insuring Agreements I. A. and I. B., the following proceedings initiated against a DIRECTOR or OFFICER for money damages or other relief against such DIRECTOR or OFFICER:

   (a) any civil, arbitration or administrative proceeding which is commenced by: (i) service of a complaint or similar proceeding, or (ii) receipt of a notice of charges, or

   (b) any criminal proceeding which is commenced by the return of an indictment.

(2) as respects Insuring Agreement I. C., the following proceedings initiated against the COMPANY for money damages or other relief against the COMPANY:

   (a) any civil or arbitration proceeding which is commenced by: (i) service of a complaint or similar proceeding, or (ii) receipt of a notice of charges, or

   (b) any criminal proceeding which is commenced by the return of an indictment.

(3) CLAIM shall also include any appeal from such proceedings, or other written or verbal demand for money or services.

K. "SECURITIES CLAIM" shall mean any CLAIM (including a civil lawsuit or criminal proceeding brought by the United States Securities and Exchange Commission) for a WRONGFUL ACT arising from an actual or alleged violation of any provision or provisions of the United States Securities Act of 1933, rules and regulations thereunder and past or future amendments thereof, or the United States Securities Exchange Act of 1934, rules and regulations thereunder and past or future amendments thereof, or the common or statutory law of any state or other jurisdiction, which is:

(1) brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the purchase or sale, or solicitation of an offer to purchase or sell, any securities of the COMPANY, or

(2) brought by a securities holder of the COMPANY, whether directly, by class action, or derivatively on behalf of the COMPANY, or otherwise, alleging any WRONGFUL ACT.

L. "DETERMINATION OF NO LIABILITY" shall mean solely with respect to a SECURITIES CLAIM:

(1) a final judgment in favor of all DIRECTORS and OFFICERS and the COMPANY after the exhaustion of all appeals with respect to the SECURITIES CLAIM made against them prior to trial by reason of a motion to dismiss or a motion for summary judgment,

(2) a dismissal or a stipulation to dismiss the CLAIM without prejudice, and without the payment of any consideration by the DIRECTORS, OFFICERS, and/or the COMPANY, or

(3) a final judgment of no liability in favor of the DIRECTORS and OFFICERS and the COMPANY with respect to the SECURITIES CLAIM made against them after trial and after exhaustion of all appeals.

M. "SETTLEMENT" shall mean a compromise of any CLAIM against the DIRECTORS and OFFICERS or the COMPANY to which the INSURER has given its written consent pursuant to Policy Section VI. A.

(4) It is hereby understood and agreed that Section III. A., B., C. and D. is replaced with the following:

A If the INSURER cancels this Policy pursuant to Section VIII. A. (2), or if the entity named in Item 1. of the DECLARATIONS cancels this Policy pursuant to Section VIII. A. (1), or in the event the INSURER or entity named in Item 1. of the DECLARATIONS refuses to renew this Policy, for any reason other than the COMPANY's non-payment of premium or non-compliance with the terms and conditions of this Policy, then the entity named in Item 1. of the DECLARATIONS on behalf of the DIRECTORS and OFFICERS or the COMPANY shall have the right, upon payment of an additional premium calculated as provided in Item 6 of the DECLARATIONS to an extension of the coverage granted by this Policy with respect to any CLAIM or SECURITIES CLAIM first made against the DIRECTORS or OFFICERS, or SECURITIES CLAIM against the COMPANY, during the period of one year after the effective date of such cancellation or, in the event of such refusal to renew, after the date upon which the POLICY PERIOD ends, but only with respect to a WRONGFUL ACT committed before such date and otherwise covered by this Policy. This one year period shall be referred to in this Policy as the DISCOVERY PERIOD.

B. This Section is deleted in its entirety.

C This Section is deleted in its entirety.

D As a condition precedent to the right to purchase the DISCOVERY PERIOD, the total premium for this Policy must have been paid. The right to purchase the DISCOVERY PERIOD shall terminate unless a written request for the DISCOVERY PERIOD is given to the INSURER within thirty (30) days after the effective date of cancellation, or, in the event of a refusal to renew, within thirty (30) days after the POLICY PERIOD ends, together with payment of the appropriate premium for the DISCOVERY PERIOD. In the event that such written request and premium paid is not so given to the INSURER, there shall be no right to purchase the DISCOVERY PERIOD at any later date.

(5) It is hereby understood and agreed that Section IV., under the title "EXCLUSIONS," of this Policy is amended as follows:

The first sentence of Section IV. is amended as follows:

The INSURER shall not be liable to make any payment for LOSS in connection with any CLAIM or SECURITIES CLAIM made against the DIRECTORS or OFFICERS or the COMPANY;

(6) It is hereby understood and agreed that Section IV., under the title "EXCLUSIONS," of this Policy is amended as follows:

A. This Exclusion is hereby deleted in its entirety.

B. Arising out of, based upon or attributable to the DIRECTORS or OFFICERS or the COMPANY gaining in fact any profit or advantage to which they were not legally entitled.

D. Arising out of, based upon, brought about or contributed to by the committing in fact of fraudulent, dishonest or criminal acts by the DIRECTORS or OFFICERS, or by employees, agents or representatives of the COMPANY.

F. Arising out of or in any way involving (1) any WRONGFUL ACT, or any fact, circumstance or situation which has been the subject of any notice given prior to the effective date of this Policy under any insurance policy providing protection for the DIRECTORS or OFFICERS or the COMPANY, including any matter in any way related thereto, or (2) any other WRONGFUL ACT, together with a WRONGFUL ACT which has been the subject of such notice described in the preceding clause, would constitute INTERRELATED WRONGFUL ACTS.

(7) It is hereby understood and agreed that Section IV., under the title "EXCLUSIONS," of this Policy is amended as follows:

The last sentence of Section IV. is amended as follows:

**NOTE: THE WRONGFUL ACT OF ANY DIRECTOR, OFFICER OR THE COMPANY SHALL NOT BE IMPUTED TO ANY OTHER DIRECTOR OR OFFICER FOR THE PURPOSE OF DETERMINING THE APPLICABILITY OF EXCLUSIONS B., C., D. AND L.**

(8) It is hereby understood and agreed that Section V., under the title "LIMIT OF LIABILITY," of this Policy is amended as follows:

A. The INSURER shall be liable to pay one hundred percent (100%) of LOSS in excess of the applicable retention amount stated in Item 4. of the DECLARATIONS up to the Limit of Liability stated in Item 3. of the DECLARATIONS. The Limit of Liability stated in Item 3. of the DECLARATIONS is the limit of the INSURER's liability for all LOSS under Insuring Agreements Section I. A , B. and C. combined, arising out of all CLAIMS or SECURITIES CLAIMS first made against the DIRECTORS, OFFICERS, or the COMPANY during the POLICY PERIOD and the DISCOVERY PERIOD (if applicable).

B. CLAIMS or SECURITIES CLAIMS based upon or arising out of the same WRONGFUL ACT, or fact, circumstance or situation, or any INTERRELATED WRONGFUL ACT, or fact, circumstance or situation, or one or more series of any similar, repeated or continuous WRONGFUL ACTS of one or more of the DIRECTORS or OFFICERS or of the COMPANY, shall be considered a single CLAIM or SECURITIES CLAIM and only one Retention and Limit of Liability shall be applicable to such single CLAIM or SECURITIES CLAIM; provided, however, that each such single CLAIM or SECURITIES CLAIM shall be deemed to fall within the POLICY YEAR in which the earliest CLAIM or SECURITIES CLAIM arising out of such WRONGFUL ACT, or fact, circumstance or situation, or one or more series of any similar, repeated or continuous WRONGFUL ACTS is first made, or within the POLICY YEAR in which notice pursuant to Section VII. A. is given, which ever occurs first. In the event that more than one DIRECTOR or OFFICER, or one or more DIRECTORS or OFFICERS and the COMPANY, are included in the same CLAIM or SECURITIES CLAIM, the total amount of such CLAIM or SECURITIES CLAIM and the Retention shall be apportioned pro-rata among the DIRECTORS and OFFICERS and the COMPANY in proportion to their respective LOSS unless otherwise mutually agreed upon by the DIRECTORS and OFFICERS, the COMPANY, and the INSURER.

E. Subject to the foregoing, the INSURER's liability for all LOSS including COSTS OF DEFENSE shall be the amount shown in Item 3. of the DECLARATIONS, and shall be the maximum aggregate Limit of Liability of the INSURER for all CLAIMS or SECURITIES CLAIMS made against the DIRECTORS and OFFICERS and the COMPANY in the POLICY YEAR, regardless of the time of payment by the INSURER.

F. Notwithstanding the foregoing, solely with respect to a SECURITIES CLAIM for a WRONGFUL ACT, the Retention specified in Item 4. of the DECLARATIONS shall apply only to COSTS OF DEFENSE. Further, no retention shall apply in the event of a DETERMINATION OF NO LIABILITY in a SECURITIES CLAIM for a WRONGFUL ACT, in which event the INSURER shall reimburse the DIRECTORS or OFFICERS or the COMPANY for any COSTS OF DEFENSE paid by the DIRECTORS and OFFICERS or the COMPANY within the retention amount.

In the event of a DETERMINATION OF NO LIABILITY, within the meaning of Section II. L. (2) (as amended above), such reimbursement shall occur ninety (90) days after the date of the dismissal or stipulation, only if:

    (1) the CLAIM, or a CLAIM which alleges the same or substantially similar facts and circumstances as the CLAIM which resulted in the DETERMINATION OF NO LIABILITY, or a CLAIM for an INTERRELATED WRONGFUL ACT, is not brought or refiled against the DIRECTORS, OFFICERS and/or the COMPANY within such ninety (90) day period, and,

    (2) the COMPANY provides an undertaking in a form acceptable to the INSURER that such reimbursement shall be returned to the INSURER in the event the CLAIM (or other CLAIM which is subject to the same single retention), is brought against the DIRECTORS, OFFICERS or the COMPANY after such ninety (90) day period and before the expiration of the statute of limitations for actual or alleged WRONGFUL ACT.

(9) It is hereby understood and agreed that Section VI., under the title "COSTS OF DEFENSE AND SETTLEMENTS," of this Policy is amended as follows:

A. The DIRECTORS and OFFICERS and the COMPANY shall not admit liability for, or settle, any CLAIM or SECURITIES CLAIM or incur COSTS OF DEFENSE, in connection with any CLAIM or SECURITIES CLAIM, without the INSURER's prior written consent, which consent shall not be unreasonably withheld. The INSURER shall be entitled to full information and all particulars it may request in order to reach a decision as to such consent. Any COSTS OF DEFENSE incurred, and/or settlements agreed to prior to the INSURER's consent thereto shall not be covered hereunder. In the event of such consent being given, and subject to all other terms and provisions of this Policy, including but not limited to Section V. D. of this Policy, the INSURER shall reimburse COSTS OF DEFENSE only upon the final disposition of any CLAIM or SECURITIES CLAIM made against the DIRECTORS or OFFICERS and/or the COMPANY.

B. (1) Notwithstanding the provisions of Section VI. A. hereinabove, under Insuring Agreement Sections I. A., I. B. or I. C., and except as hereinafter stated, the INSURER shall, upon request, advance COSTS OF DEFENSE prior to the final disposition of the CLAIM or SECURITIES CLAIM. Such advance payments by the INSURER shall be repaid to the INSURER by the DIRECTORS and OFFICERS or the COMPANY, severally according to their respective interests, in the event and to the extent that the DIRECTORS and OFFICERS or the COMPANY shall not be entitled to payment of such amounts under the terms and conditions of this Policy.

    (2) The COMPANY is not covered in any respect under Insuring Agreement Section I. A.; the COMPANY is covered, subject to the Policy's terms and conditions, only with respect to indemnification of its DIRECTORS or OFFICERS under Section I. B. as respects CLAIMS against its DIRECTORS and OFFICERS; but the COMPANY is covered, subject to the Policy's terms and conditions, under Insuring Agreement Section I. C. for SECURITIES CLAIMS made against the COMPANY. The INSURER has no obligation under this Policy for defense fees and costs incurred by, judgments against or SETTLEMENTS by the COMPANY arising out of any CLAIM made against the COMPANY other than a covered SECURITIES CLAIM, nor any obligation to pay any amount arising out of any legal liability that the COMPANY has except as respects covered SECURITIES CLAIMS against the COMPANY. But the INSURER has an obligation, subject to the terms and conditions of this Policy, for COSTS OF DEFENSE incurred by, judgments against or SETTLEMENTS by the COMPANY arising out of any covered SECURITIES CLAIM against the COMPANY.

    (3) Under Insuring Agreement Section I.B., if requested by the COMPANY, and, as to legal fees and expenses incurred in connection with or the amount of a joint SETTLEMENT of a CLAIM other than a SECURITIES CLAIM made against the COMPANY and its DIRECTORS and OFFICERS, the INSURER shall advance COSTS OF DEFENSE or pay SETTLEMENT amounts on behalf of the DIRECTORS and OFFICERS, such COSTS OF DEFENSE or SETTLEMENTS having been consented to by the INSURER, pursuant to its allocated share

upon the satisfaction of the applicable allocated Retention, except when payment of such COSTS OF DEFENSE or SETTLEMENT amounts is prohibited by law or regulation  The INSURER and the COMPANY, on behalf of itself and the DIRECTORS and OFFICERS, agree to use their best efforts to determine a fair and proper allocation of the amounts as between the COMPANY and the covered LOSS of the DIRECTORS and OFFICERS taking into account the relative legal and financial exposures of and relative benefits obtained by the DIRECTORS and OFFICERS and the COMPANY.  If a fair and proper allocation cannot be agreed to, then the INSURER shall pay the LOSS (including the advancement of COSTS OF DEFENSE) that the INSURER believes to be covered under the Policy until a different amount shall be agreed upon or determined pursuant to the provisions of this Policy and applicable law.  Any payments made under this paragraph by the INSURER shall be repaid to the INSURER by the COMPANY or the DIRECTORS and OFFICERS, severally according to their respective interests, in the event and to the extent that the DIRECTORS and OFFICERS or the COMPANY shall not be entitled to payment of such amounts under the terms and conditions of the Policy.

(4) Any advancement of COSTS OF DEFENSE by the INSURER, shall be on the condition that:

    (a) If advanced under Insuring Agreement Section I. A., the DIRECTORS and OFFICERS  shall provide a written undertaking satisfactory to the INSURER providing that in the event the INSURER has no ultimate liability under the Policy to the DIRECTORS and OFFICERS with respect to such COSTS OF DEFENSE, such DIRECTORS and OFFICERS agree to repay to the INSURER upon demand all such COSTS OF DEFENSE advanced on their behalf by virtue of this provision; and

    (b) If advanced under Insuring Agreement Section I. B. or I.C., the COMPANY and the DIRECTORS and OFFICERS shall provide written undertakings satisfactory to the INSURER providing that in the event the INSURER has no ultimate liability under the Policy to the COMPANY or DIRECTORS and OFFICERS with respect to such COSTS OF DEFENSE, the COMPANY and such DIRECTORS and OFFICERS agree to repay to the INSURER upon demand all such COSTS OF DEFENSE advanced on their behalf by virtue of this provision, and

    (c) Any COSTS OF DEFENSE advanced by the INSURER shall reduce the Limit of Liability for such CLAIM or SECURITIES CLAIM to the extent that they are not in fact repaid to the INSURER in accordance with subparagraphs (a) and (b) hereinabove.

C. It shall be the duty of the DIRECTORS and OFFICERS and the COMPANY and not the duty of the INSURER to defend CLAIMS or SECURITIES CLAIMS, provided that the DIRECTORS or OFFICERS and the COMPANY shall only retain counsel as is mutually agreed upon with the INSURER.

The INSURER shall at all times have the right, but not the duty, to associate with the DIRECTORS or OFFICERS and/or the COMPANY in the investigation, defense or settlement of any CLAIM or SECURITIES CLAIM to which this Policy may apply.  The COMPANY and the DIRECTORS and OFFICERS shall provide the INSURER with such information, assistance and cooperation as the INSURER may reasonably request.

(10)    It is hereby understood and agreed that Section VII. A. and D., under the title "NOTICE OF CLAIM," of this Policy is amended as follows:

A. The DIRECTORS and OFFICERS and/or the COMPANY shall, as a condition precedent to their rights under this Policy, give the INSURER notice in writing, as soon as practicable, of any CLAIM or SECURITIES CLAIM first made against the DIRECTORS or OFFICERS or the COMPANY, during the POLICY PERIOD or DISCOVERY PERIOD (if applicable), but in no event later than sixty (60) days after such CLAIM or SECURITIES CLAIM is made, and shall give the INSURER such information and cooperation as the INSURER may reasonably require.

   D   The INSURER shall have the right but not the obligation to make any investigation it deems
       expedient and with the consent of the INSURED against who the CLAIM has been made or the
       COMPANY on behalf of the INSURED. make settlement within the available Limit of Liability
       (whether above or below the applicable Retention).

(11)   It is hereby understood and agreed that Section VIII. of this Policy is amended by the replacement of
       paragraphs VIII. A. (2) and (4), B., D., E. (1), H. and I. with the following:

   A.   CANCELLATION OR NON-RENEWAL

       (2)  This Policy may be canceled by the INSURER by mailing to the entity named in Item 1. of the
            DECLARATIONS written notice stating when, not less than sixty (60) days thereafter, such
            cancellation shall be effective.  The mailing of such notice shall be sufficient notice and the
            effective date of cancellation stated in the notice shall become the end of the POLICY PERIOD.
            Delivery of such written notice by the INSURER shall be equivalent to mailing.

       (4)  If the INSURER elects not to renew this Policy, the INSURER shall provide the entity named in
            Item 1. of the DECLARATIONS with no less than sixty (60) days advance notice thereof.

   B.   TERMINATION

   This Policy shall be deemed terminated immediately upon the happening of any of the following events:

       (1)  The acquisition of the entity named in Item 1. of the DECLARATIONS by another entity, or the
            merger of the entity named in Item 1. of the DECLARATIONS into another entity such that the
            entity named in Item 1. of the DECLARATIONS is not the surviving entity, or the consolidation of
            the entity named in Item 1. of the DECLARATIONS with another entity, or the acquisition of
            substantially all of the assets of the entity named in Item 1. of the DECLARATIONS by another
            entity; provided, however, in the event of termination of the Policy pursuant to this paragraph,
            the Policy will remain in effect until the end of the POLICY PERIOD as stated in Item 2. of the
            DECLARATIONS, but only with respect to a WRONGFUL ACT occurring prior to such merger,
            acquisition or consolidation, or

       (2)  The appointment of a receiver, conservator, trustee, liquidator, or rehabilitator, or any similar
            official for or with respect to the entity named in Item 1. of the DECLARATIONS.

   If this Policy shall be terminated pursuant to Section VIII. B. (1), then the premium will be fully
   earned in consideration for the coverage extended.  If this Policy shall be terminated pursuant to
   Section VIII. B. (2), the INSURER shall retain the pro-rata portion of the premium.  Payment or
   tender of any unearned premium by the INSURER shall not be a condition precedent to the
   effectiveness of terminations, but such payment shall be made as soon as practicable.

   D.   ACTION AGAINST THE INSURER

       (1)  No action shall be taken against the INSURER unless, as a condition precedent thereto, there
            shall have been full compliance with all the terms of this Policy, and until the DIRECTORS' or
            OFFICERS' or COMPANY's obligation to pay shall have been finally determined, either by an
            adjudication against the DIRECTORS or OFFICERS or the COMPANY or by written agreement
            of the DIRECTORS, OFFICERS, and/or the COMPANY, claimant and the INSURER.

       (2)  No person or organization shall have any right under this Policy to join the INSURER as a party
            to any CLAIM or SECURITIES CLAIM  against the DIRECTORS or OFFICERS or the
            COMPANY nor shall the INSURER be impleaded by the DIRECTORS, OFFICERS  or the
            COMPANY or their legal representative in any such CLAIM.

   E.   ACQUISITIONS, MERGERS AND SUBSIDIARIES

(1) In the event the COMPANY acquires another entity or acquires substantially all of the assets of another entity, or merges with another entity such that said COMPANY is the surviving entity, or acquires a SUBSIDIARY, after the inception of this Policy, the terms of this Policy shall automatically apply to such acquisition or acquired SUBSIDIARY if the total assets of the acquisition or acquired SUBSIDIARY are less than twenty percent (20%) of the total assets of the COMPANY prior to the time of the acquisition or merger. If the total assets of the acquisition or acquired SUBSIDIARY are greater than twenty percent (20%) of the total assets of the COMPANY prior to the time of the acquisition or merger, the terms of this Policy shall automatically apply for a period of forty-five (45) days after the acquisition. No coverage shall be afforded under this Policy after such forty-five (45) day period for any LOSS in any way involving the assets or entity acquired or the assets, liabilities, Directors, Officers or employees of the entity acquired or merged with, or such SUBSIDIARY unless and until:

(a) The entity named in Item 1. of the DECLARATIONS provides written notice of such transaction or event to the INSURER within such forty-five day period after the effective date of such transaction or event;

(b) The entity named in Item 1. of the DECLARATIONS provides the INSURER with such information in connection therewith as the INSURER may deem necessary;

(c) The entity named in Item 1. of the DECLARATIONS accepts any special terms, conditions, exclusions or additional premium charge required by the INSURER; and

(d) The INSURER, at its sole discretion, specifically agrees in writing to provide such coverage.

## H. CONFORMITY TO STATUTE

Any terms of this Policy which are in conflict with the terms of any applicable laws construing this Policy, including any endorsement to this Policy which is required by any state Department of Insurance (or equivalent regulatory agency or authority)("State Amendatory Endorsement"), are hereby amended to conform to such laws. Nothing herein shall be construed to restrict the terms of any State Amendatory Endorsement. In addition, to the extent permissible by relevant law, nothing in any State Amendatory Endorsement shall be construed to restrict the terms of this Endorsement Form No. GIC-7425.7600ENH.

## I. ENTIRE AGREEMENT

By acceptance of this Policy, the DIRECTORS, OFFICERS and the COMPANY and the INSURER agree that this Policy (including the Application and any materials submitted therewith) and any written endorsements attached thereto constitute the entire agreement between the parties.

## O. MARITAL ESTATE EXTENSION

Subject otherwise to the terms hereof, this Policy shall cover LOSS arising from any CLAIMS or SECURITIES CLAIMS made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of a DIRECTOR or OFFICER, arising solely out of his or her status as the spouse of a DIRECTOR or OFFICER, including such CLAIMS or SECURITIES CLAIMS that seek damages recoverable from marital community property, property jointly held by the DIRECTOR or OFFICER and the spouse, or property transferred from the DIRECTOR or OFFICER to the spouse; provided, however, that this extension shall not afford coverage for any CLAIM or SECURITIES CLAIM for any actual or alleged WRONGFUL ACT of the spouse and that this Policy shall apply only to actual or alleged WRONGFUL ACTS of a DIRECTOR or OFFICER subject to the full Policy's terms and conditions.

### P. GLOBAL EXTENSION

It is further understood and agreed that such coverage as is provided under this Policy shall include coverage worldwide.

It is further understood and agreed that with regard to any CLAIM or SECURITIES CLAIM made outside of the United States of America, its territories or possessions and reported to the INSURER under the provisions of this Policy, the INSURER shall, when requested to do so in writing by the entity named in Item 1 of the DECLARATIONS pay such LOSS incurred by the DIRECTORS and OFFICERS, or with respect to a SECURITIES CLAIM or LOSS incurred by the COMPANY, and/or reimburse the COMPANY for all LOSS arising from a WRONGFUL ACT by the DIRECTORS and OFFICERS by reason of a final judgment under law by a court of competent jurisdiction for any such WRONGFUL ACT

The amounts due under this extension shall be paid in the currency of the country in which the final adjudication for such LOSS was determined.

It is further understood and agreed that the INSURER shall not be held responsible for any delay or failure to perform its obligations hereunder due to National, Federal, State, or Municipal action or regulation, strikes or other labor troubles, acts of God, war, riot, insurrection or mutiny, or any other causes, contingencies, or circumstances without the United States not subject to the INSURER's control which make the fulfillment of this agreement impracticable.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations, of the above-mentioned Policy other than as above stated

Date: May 4, 1998                    By: *Michael Zartman*

Company Officer or Authorized Agent

Form No GIC-7425 7600ENH (07/95)

# GΞNΞSIS GENESIS INSURANCE COMPANY

### GENERAL LIMITATION OF COVERAGE
### PAYMENTS/DISBURSEMENTS EXCLUSION

Policy Number: **YXB001117B**

It is understood and agreed that the INSURER shall not be liable to make any payment for LOSS based upon or attributable to or arising out of:

(1) payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time domestic or foreign governmental or armed services officials, agents, representatives, employees or any members of their family or any entity with which they are affiliated; or

(2) payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time officials, directors, agents, partners, representatives, principal shareholders, or owners or employees of affiliates (as the term is defined in the Securities Exchange Act of 1934), including any of their officers, directors, agents, owners, partners, representatives, principal shareholders or employees of any customers of the COMPANY or any members of their family or any entity with which they are affiliated; or

(3) political contribution, whether domestic or foreign.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Date: May 4, 1998

By: *Michael Zartman*

Company Officer or Authorized Agent

Form No. GIC-7444 (08/93)

# GENESIS   GENESIS INSURANCE COMPANY

## NUCLEAR ENERGY LIABILITY EXCLUSION

Policy Number: **YXB001117B**

It is agreed that the Policy does not apply:

I   Under any Liability Coverage, to injury, sickness, disease, death or destruction

   (a)   with respect to which an INSURED under the Policy is also an Insured under a nuclear energy liability policy issued by Nuclear energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (b)   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.   Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

   (a)   the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an INSURED or (2) has been discharged or dispersed therefrom;

   (b)   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an INSURED; or

   (c)   the injury, sickness, disease, death or death or destruction arises out of furnishing by an INSURED of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions of Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

III   As used in this endorsement.

   "hazardous properties" include radioactive, toxic or explosive properties;

   "nuclear material" means source material, special nuclear material or by-product material;

   "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   "waste" means any waste material (a) containing by-product material other than the tailing or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (b) resulting from the operation by any person or organization of any nuclear facility included under the first two paragraphs of the definition of nuclear facility;

   "nuclear facility" means

(a)     any nuclear reactor,

(b)     any equipment or device designed or used for (1) separating the isotopes or uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)     any equipment or device used for the processing fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the INSURED at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof or more than 250 grams of uranium 235,

(d)     any structure, basis, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor; means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material

With respect to injury to or destruction of property, the word "injury" or "destruction; includes all forms of radioactive contamination of property.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provision, agreements or limitation of the above mentioned Policy other than as above stated.

Date:  May 4, 1998                                    By:   *Michael Zartman*

                                                             Company Officer or Authorized Agent

Form No GIC-7460 (08/93)

# GENESIS GENESIS INSURANCE COMPANY

### DIRECTORS AND OFFICERS LIABILITY INSURANCE
### COLORADO DISCLOSURE FORM CLAIMS MADE POLICY

Policy Number: **YXB001117B**

## IMPORTANT NOTICE TO POLICYHOLDERS

THIS DISCLOSURE FORM IS NOT YOUR POLICY. IT MERELY DESCRIBES SOME OF THE MAJOR FEATURES OF OUR CLAIMS MADE POLICY FORM. READ YOUR POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES, AND WHAT IS AND IS NOT COVERED. ONLY THE PROVISIONS OF YOUR POLICY DETERMINE THE SCOPE OF YOUR INSURANCE PROTECTION.

Your Policy is a claims made policy. It applies only to **Claims** made against you after the inception date and before the end of the **Policy Period** involving injury or damage that occurs after the Policy Past Acts Date. Upon termination of your Policy, a **Discovery Period** may be available.

OCCURRENCE VS. CLAIMS-MADE

There is no difference in the kinds of injury and damage covered by either an "occurrence" policy or a "claims made" policy. Claims for damages may be assigned to different policy periods, however, depending on which policy you have purchased.

In an "occurrence" policy, coverage is provided for liability because of bodily injury and property damage that **occurs during the policy period, no matter when the claim is made.**

In your "claims made" policy, coverage is provided for a **WRONGFUL ACT if the CLAIM is first made during the Policy Period.** The **Claim** must be a demand for damages by an injured party but it does not have to be in writing. Under most circumstances, a **Claim** is considered made when it is received and recorded by you or by us; but sometimes, a **Claim** may be deemed made at an earlier time. This can happen when another **Claim** for the same injury or damage has already been made, or when the **Claim** is received and recorded during the **Discovery Period**.

PRINCIPAL BENEFITS

This Policy provides coverage for **Loss** resulting from **Claims** first made during the **Policy Period** against **Officers** and **Directors** for a **Wrongful Act** up to the maximum dollar limit specified in the Policy.

The principal benefits and coverage are explained in detail in your claims made policy. Please read it carefully.

EXCEPTION, REDUCTION AND LIMITATIONS

Your claims made policy contains certain exceptions, reductions and limitations. Please read it carefully.

RENEWALS, TAILS AND DISCOVERY PERIODS

Your claims made policy has some unique features relating to renewal, **Discovery Period** , and coverage of occurrences with long periods of exposure. These special claims made provisions are described below:

### Special "Claims Made" Provisions

Two concepts relating to continuity of coverage under the "claims made" policy are especially important to understand. These involve the **"Past Acts Date"** and the **"DISCOVERY PERIOD".**

## Retroactive Date

When you have a "Past Acts Date", **there is no coverage for a WRONGFUL ACT that occurred before that Past Acts Date, even if the CLAIM is first made during the POLICY PERIOD.**

If there is no Past Acts Date, the Policy will respond only to **Claims** first made during the **Policy Period** for covered damage, no matter when the damage occurred. But if previous "occurrence" type insurance also applies to the injury or damage, your "claims made" policy will be excess; that is, it will apply only after that previous insurance is used up.

If there is a Past Acts Date, **it cannot be moved ahead in time, except under certain circumstances,** e.g., you changed insurers; there is substantial change in your operations that increases your exposure to loss; you failed to provide us with information you knew about the nature of your business or premise, and then only with your written consent. It is important to understand how the "claims made" policy's **Discovery Period** guarantees continuity of coverage if you are offered a renewal or replacement policy with a later Past Acts Date than the one in your current Policy.

## DISCOVERY PERIOD or "Tails"

### WARNING

If a **Claim** is made **after** the termination of your claims made policy, you may not have coverage for that **Claim** unless you purchase a **Discovery Period** or "tail" endorsement, which must be offered to you for at least one year, at a premium not to exceed 200% of your terminated policy premium.

Carefully review the policy provisions regarding the available **Discovery Period**, especially the length of coverage and price, **and** the time during which you must purchase or accept any offered **Discovery Period**.

Date: July 29, 1998                                          By: *Michael Zartman*

Company Officer or Authorized Agent

FORM NO. GIC-7473 (08/93) CO

# G=N=SIS  GENESIS INSURANCE COMPANY

### DIRECTORS AND OFFICERS LIABILITY INSURANCE
### COLORADO FRAUD STATEMENT

### IMPORTANT NOTICE TO APPLICANTS

Policy Number: **YXB001117B**

THE STATE OF COLORADO REQUIRES THAT THIS STATEMENT BE ATTACHED TO EVERY DIRECTORS
AND OFFICERS LIABILITY INSURANCE POLICY APPLICATION.  PLEASE READ THE STATEMENT
CAREFULLY.

**IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE,
OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE
COMPANY FOR THE PURPOSE OR DEFRAUDING OR ATTEMPTING
TO DEFRAUD THE COMPANY.   PENALTIES MAY INCLUDE
IMPRISONMENT, FINES, DENIAL OR INSURANCE, AND CIVIL
DAMAGES.   ANY INSURANCE COMPANY OR AGENT OF AN
INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE
INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A
POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF
DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY
HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR
AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE
REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN
THE DEPARTMENT OF REGULATORY AGENCIES.**

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions,
agreements or limitations of any policy issued by the INSURER.

Date:  July 29, 1998                                    By:  *Michael Zartman*

                                                       Company Officer or Authorized Agent

FORM NO. GIC-7474 CO (06/96)

# G∃N∃SIS GENESIS INSURANCE COMPANY

**DIRECTORS AND OFFICERS LIABILITY INSURANCE
COLORADO AMENDATORY ENDORSEMENT**

Policy Number: **YXB001117B**

Section III. A., C., and D. of the Policy, under the title "DISCOVERY PERIOD," are hereby deleted and the following sections substituted:

SECTION III. DISCOVERY PERIOD

A.   If the **Insurer** or **Insured** cancels this Policy pursuant to Section VIII. A. or in the event the **Insurer** or **Insured** refuses to renew this Policy, then the entity named in Item 1 of the Declarations on behalf of the **Directors** and **Officers** shall have the right, upon payment of an additional premium calculated as provided in Item 6 of the Declarations, to an extension of the coverage granted by this Policy with respect to any **Claim** first made against the **Directors** or **Officers** during the period of one year after the effective date of such cancellation or, in the event of such refusal to renew, after the date upon which the **Policy Period** ends, but only with respect to any **Wrongful Act** committed before such date and otherwise covered by this Policy. This one year period shall be referred to in this Policy as the **Discovery Period**.

C.   In the event of renewal on terms and conditions different from those in effect during the **Policy Period**, the **Company** shall have the right, upon payment of an additional premium to be determined by the **Insurer**, to an extension of the original terms and conditions with respect to any **Claim** first made against any **Director** or **Officer** during the period of one year after the effective date of renewal, but only with respect to any **Wrongful Act** committed prior to the effective date of the renewal. This right of extension shall terminate unless written notice of such election is received by the **Insurer** within thirty (30) days after the effective date of renewal.

D.   The right to purchase the **Discovery Period** shall terminate unless a written request for the **Discovery Period** is given to the **Insurer** within sixty (60) days after the effective date of cancellation, or, in the event of a refusal to renew, within sixty (60) days after the **Policy Period** ends, together with payment of the appropriate premium for the **Discovery Period**. In the event that such written request and premium paid is not so given to the **Insurer**, there shall be no right to purchase the **Discovery Period** at any later date.

All other provisions of the Policy remain unchanged.

Michael Zartman

Date:   July 29, 1998

By: _____
Company Officer or Authorized Agent

FORM NO. GIC-7480 (08/93)  CO

# GENESIS GENESIS INSURANCE COMPANY

### DIRECTORS AND OFFICERS LIABILITY INSURANCE
### COLORADO AMENDATORY ENDORSEMENT

Policy Number: **YXB001117B**

Sections VIII. A. (2), (4) and (5), of the Policy, under the title "GENERAL CONDITIONS," are hereby deleted and the following sections are added:

SECTION VIII.   GENERAL CONDITIONS

A.   CANCELLATION OR NON-RENEWAL

(2) This Policy may be cancelled by the **Insurer** by mailing to the entity named in Item 1 of the Declarations written notice stating when, not less than forty-five (45) days thereafter, such cancellation shall be effective.  The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**.  Delivery of such written notice by the **Insurer** shall be equivalent to mailing.

(4) If the **Insurer** elects not to renew this Policy, the **Insurer** shall provide the entity named in Item 1 of the Declarations with no less than forty-five (45) days advance notice thereof.

(5) If the period of limitation relating to the giving of notice as provided for in Section VIII. A. (2) or VIII. A. (4) is prohibited or made void by any law controlling the construction thereof, such period shall be amended so as to be equal to the minimum period of limitation permitted by such law.

Section VIII. of the Policy under the title "GENERAL CONDITION," is hereby amended with the addition of the following Section N.:

N.   LOSS INFORMATION

The **Insurer** must furnish to the **Insured**, upon its request and within thirty (30) days thereafter, sufficient information about closed or paid **Claims, Claims** for which the **Insurer** has established reserves, and claims for which the **Insurer** has received notices of occurrences which could give rise to **Claims**, to allow the **Insured** to determine how much of its aggregate coverage remains available under the Policy.

All other provisions of the Policy remain unchanged.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above-mentioned policy other than as above stated.

Date:  July 29, 1998

By:  *Michael Zartman*

Company Officer or Authorized Agent

FORM No. GIC-7481 (11/94) CO

□ GENESIS INDEMNITY INSURANCE COMPANY

### DIRECTORS AND OFFICERS LIABILITY INSURANCE

### RENEWAL APPLICATION

NOTE: This Application, including all materials submitted therewith, shall be treated in strictest confidence.

**NOTICE: THE POLICY FOR WHICH RENEWAL APPLICATION IS MADE, SUBJECT TO ITS TERMS, APPLIES ONLY TO ANY "CLAIM" (AS DEFINED IN THE POLICY) FIRST MADE OR DEEMED MADE AGAINST THE "INSURED" (AS DEFINED IN THE POLICY) DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED BY THE AMOUNTS INCURRED AS "COST OF DEFENSE" (AS DEFINED IN THE POLICY), AND SUCH COST OF DEFENSE SHALL BE SUBJECT TO THE RETENTION AMOUNT. THE POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE UNDERWRITER TO DEFEND ANY INSURED.**

Complete and correct information must be supplied by the Applicant whether or not such information is deemed confidential by the Applicant. If additional space is required for a response, please include such response in an attachment to this Application, clearly identifying the Application question to which a response is being provided.

1. a) Name of Applicant: _____ First American Railways, Inc. _____

   b) Principal Address: _____ 3700 North 29th Avenue, Suite 202, Hollywood, FL 33020

   c) Phone Number: _____ 954-920-0606

   d) Name and title of the officer of the Applicant designated as the representative of the Applicant to receive notices from or provide information to the Underwriter on behalf of all persons and entities proposed as named insureds:

   _Ron Hartman, Executive Vice President_

2. As an attachment to this Application, provide the names and number of shares for all persons or entities that presently own or control, have stated the intention to acquire, of record or beneficially, more than 5% of the Applicant's outstanding stock. If not applicable or if there has been no change since the latest available notice of shareholders meeting and proxy statement, indicate here

   _Attached_

3. If permitted under state law or statute, has the Applicant adopted a provision limiting the personal liability of its Directors? __ Yes   √ No   __ Not Permitted

4. a) Does the Applicant have an internal audit procedure? __ Yes   √ No

   b) Are there any areas in the audit procedures of the Applicant that the outside auditors have criticized, or recommended changing that have not been changed? __ Yes   √ No

   If yes, provide details in an attachment to this Application.

FORM GIL 276 (5.95)

Sale whether the Applicant any Subsidiary has in the past 12 month contemplated or agreed to or contemplates within the next 12 months, any of the following, whether or not such transactions were or will be completed in such period. (If yes, describe the terms of each such transaction in an attachment to this Application):

a) Merger or consolidation with another entity whose assets prior to such merger or consolidation exceed 10% of the Applicant's consolidated assets. ✓Yes ___No *Acquisition of Disko in March 1997*

b) Acquisition or disposition of any assets or stock of any other corporation or interests in any partnership or joint venture where such acquisition or disposition increased or decreased or would increase or decrease the Applicant's consolidated assets by more than 10%. ✓Yes ___No

c) Sale, distribution or divestiture of any assets or stock, other than in the ordinary course of business, involving more than 10% of the Applicant's consolidated assets. ✓Yes ✓No *(1) Sale of securities in June 1997 Jan 1991, Feb 1*

d) Reorganization or arrangement with creditors under federal or state law. ___Yes ✓No

e) Borrowing of funds or incurring indebtedness where the transaction increased or would increase, the Applicant's consolidated liabilities by 10% or more. ✓Yes ___No *(1) June 1997 debt offer*

6. As part of this Application, submit a schedule of all material litigation with a brief description of each case filed within the last 12 months or since the date of the last Application for Directors and Officers Liability insurance, as well as any adverse judgements that have been rendered against the Applicant or any of its Subsidiaries in the past 12 months. *See Attachment (4)* *(2) Debt incurred with Disko acquisition*

7. Has any Director or Officer of the Applicant or any Subsidiary been charged with or convicted of any criminal act within the last 12 months, or is any Director or Officer the subject of any pending criminal or administrative investigation?

___Yes ✓No If yes, provide details as an attachment to this Application.

8. ADDITIONAL APPLICATION REQUIREMENTS. THIS APPLICATION ALSO INCLUDES THE FOLLOWING:

a) Documents to be submitted by the Applicant:

✓ i) Last annual report including audited financial statement with all notes and schedules;

✓ ii) Latest 10-K reports and 10-Q report filed with the SEC subsequent to the last annual report and most recent Form 8-K;

*M. Action* iii) The text of any presentation, together with all supporting documents, by management to securities analysts in the last 12 months;

✓ iv) Any reports prepared by outside financial analysts or consultants within the past 12 months;

✓ v) Most recent CPA letter to management on internal controls and any written response thereto; and

✓ vi) Most recent letter(s) from legal counsel to the independent accountants describing litigation involving the Applicant.

b) "Supplement to Policy Application" summarizing information provided by management of the Applicant during a conference call or meeting.

Page 2 of 3

0-cv-07762-NCR Document 1 Entered on FLSD Docket 12/01/2000 Page

The undersigned certify that they are duly authorized representative(s) of the Applicant which is submitting this Application to Genesis Insurance Company or Genesis Indemnity Insurance Company ("Underwriter") for a policy of insurance. THE STATEMENTS AND INFORMATION ABOVE AND ALL SCHEDULES AND DOCUMENTS SUBMITTED, TOGETHER WITH MATERIAL CHANGES THERETO OF WHICH THE UNDERWRITER RECEIVES NOTICE AND THE APPLICATION(S) SUBMITTED TO PRMS, INC. DATED _____, ARE DEEMED PARTS OF THE APPLICATION (ALL OF WHICH SCHEDULES AND DOCUMENTS SHALL BE DEEMED ATTACHED TO THE POLICY AS IF PHYSICALLY ATTACHED THERETO), AND THE WORD "APPLICATION" REFERS TO ALL OF THE FOREGOING.

The Applicant represents that (1) to the best of its knowledge, the statements set forth in the Application are true and correct, and (2) reasonable efforts have been made to obtain information sufficient for accurate completion of this Application. It is further agreed by the Applicant that each policy or renewal thereof, if issued, is issued in reliance upon the truth of the Application and the representations set forth herein.

The Applicant agrees to notify the Underwriter promptly in writing of any material change in the information contained in this Application. The Applicant further understands and agrees that if it fails to notify the Underwriter as required above with respect to such material change in the information contained in this Application, any insurance policy issued by the Underwriter may be subject to termination or cancellation.

The Applicant understands and agrees that this Application forms the basis upon which the Underwriter assesses the risk presented and issues a quotation for insurance.

It is understood and agreed that execution of this Application shall not bind any Applicant to purchase insurance from the Underwriter.

BY: _____   BY: _____

TITLE: _Chairman of The Board, Chief Exec. Officer_   TITLE: _Chairman of The Board, Chief Exec. Officer_
_President_   _President_

DATE: _April 1, 1998_   DATE: _April 1, 1998_

THIS APPLICATION MUST BE SIGNED BY THE CHAIRMAN OF THE BOARD OF DIRECTORS AND THE CHIEF EXECUTIVE OFFICER. IN THE EVENT THAT THE CHAIRMAN AND CHIEF EXECUTIVE OFFICER ARE THE SAME PERSON, THE CHIEF FINANCIAL OFFICER MUST SIGN THE APPLICATION FOR THE REQUIRED SECOND SIGNATURE.

A POLICY CANNOT BE ISSUED UNLESS THE APPLICATION IS PROPERLY SIGNED AND DATED.

IT IS AGREED THAT THE APPLICANT WILL FILE WITH GENESIS INSURANCE COMPANY OR GENESIS INDEMNITY INSURANCE COMPANY, AS SOON AS SAME BECOME AVAILABLE, A COPY OF EACH REGISTRATION STATEMENT AND ANNUAL OR INTERIM REPORT OR PROXY STATEMENT OR PRESS RELEASE WHICH THE APPLICANT MAY FROM TIME TO TIME FILE WITH THE SECURITIES AND EXCHANGE COMMISSION.

FORM GIC 7476 (5/95)

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.



Secretary

President

GIC-12-8J

# GENESIS

Genesis Professional Liability Underwriters
25550 Chagrin Boulevard, Suite 300
Beachwood, OH 44122-5576
216-766-5416
216 591-0906 Facsimile

April 22, 1998

*[handwritten: CML : OTHER*
*BI SE: 23.571 - 20.555 / 2.90*
*CAV : 9.2]*

**VIA FACSIMILE (630)577-6590**

Ms Amy Ceaser
Aon Financial Services Group
2200 Cabot Drive
Third Floor
Lisle, IL 60532

Dear Amy:

We are pleased to issue this binder letter authorized by Genesis Insurance Company ("Genesis"), subject to the terms and conditions set forth in our indication dated April 16, 1998 and subsequent policy negotiations:

| | |
|---|---|
| **Named Insured:** | First American Railways, Inc. ("First American")<br>3700 N 29th Avenue<br>Suite 202<br>Hollywood, FL 33020 |

**Policy Type:** Directors and Officers Liability with Entity Coverage for SECURITIES CLAIMS

**Coverage State:** FL

**Limit of Liability:** $ 5,000,000

**Retentions:** $0/$0/$75,000/$150,000[1] /$150,000[2]

[1] A $150,000 retention will apply to all SECURITIES CLAIMS. The securities-related retention applies to COSTS OF DEFENSE. No retention for COSTS OF DEFENSE where all insureds are dismissed or found not liable. The retention does not apply to settlements or judgments of SECURITIES CLAIMS

[2] A $150,000 retention will apply to all non-entity Employers' Practices Liability claims.

**Discovery Period:** One Year at 75% of annual premium

**Policy Period:** April 29, 1998 to April 29, 1999

**Reserved Policy Number:** YXB001117B

Subject to the following conditions:

1. Receipt of premium: $ 68,000 [1,2]
   [1] Includes 00.0% commission.
   [2] *Premium must be received on or before May 13, 1998.*

Please remit payment to:     Genesis D&O Liability Insurance Program
                             75 Remittance Drive, Suite 1205
                             Chicago, IL 60675-1205

WE MUST RECEIVE ALL OF THE ITEMS REQUIRED UNDER CONDITION (1) ABOVE ON OR BEFORE MAY 13, 1998 ("APPLICABLE DUE DATE") AS A "CONDITION SUBSEQUENT" TO THE TEMPORARY INSURANCE COVERAGE PROVIDED BY THIS BINDER LETTER. IF ALL OF THESE ITEMS ARE NOT RECEIVED BY GENESIS ON OR BEFORE THE APPLICABLE DUE DATE, THE TEMPORARY INSURANCE COVERAGE PROVIDED BY THIS BINDER LETTER MAY BE RESCINDED AND VOID AS IF THIS LETTER HAD NEVER BEEN ISSUED, AND GENESIS MAY AT ITS ELECTION, REFUSE TO ISSUE A POLICY OR MAY ISSUE A POLICY EFFECTIVE AS OF THE DATE THAT THE LAST OF THE REQUIRED ITEMS ARE RECEIVED.

Policy terms and conditions:

This binder is conditioned upon the terms and conditions as stated in my indication dated April 16, 1998, subsequent policy negotiations, policy forms and endorsements as attached and listed below:

Directors and Officers Liability Policy shall be subject to:

| Form GIC-7417 (8/93) | Declarations Page. |
| Form GIC-7418 (8/93) | Policy form. |
| Form GIC-7425 7600 | Addition to General Conditions (V). This endorsement will be modified to provide the policy enhancements provided in our indication dated April 16, 1998 |
| Form GIC-7422 | Prior & Pending Litigation exclusion (04/29/96) |
| Form GIC-7422 | Conflicts of interest between Thomas Radar, RRI and the Company. |
| Form GIC-7425.EP | Non-entity Employers' Practices Extension ($150,000 retention) |
| Form GIC-7444 | Payments & Disbursements exclusion |
| Form GIC-7460 | Nuclear Energy exclusion |
| Form GIC-7473.FL | Florida mandatory (fraud warning) |
| Form GIC-7481.FL | Florida amendatory endorsement (Cancellation/Nonrenewal terms). |

Genesis reserves the right to decline or alter terms and conditions of coverage, through endorsements or other appropriate means, depending upon its review of the information provided in and with respect to the application.

The temporary insurance coverage provided by this binder letter is subject to the terms, conditions and limitations of the letter and of the proposed policy including all endorsements, if any, referenced in previous communications to you. However, the cancellation and termination provisions of the Genesis Directors and Officers Liability policy shall not apply to the temporary insurance coverage provided by this

binder letter, to the extent that those provisions would require Genesis to furnish advance written notice of termination and/or cancellation   Any temporary insurance coverage provided by this binder letter shall expire automatically as of the date of issuance of the Genesis Directors and Officers Liability policy

You are not authorized to bind coverage on behalf of Genesis and may only communicate the terms and conditions of this binder letter to First American.  The terms and conditions set forth in this letter govern the binder and supersede any and all previous or subsequent communications provided to the insured by parties other than Genesis  No terms or conditions herein may be modified or deleted without the express written consent of Genesis  As a further condition to this binder letter, should Genesis be required to return unearned premium to First American, you must also return to First American the full amount of any commission or brokerage paid to you on such unearned premium

First American's Genesis Directors and Officers Liability policy will be available shortly after receipt and acceptance of the outstanding items and premium

We are pleased that First American has chosen Genesis for their Directors and Officers Liability Insurance. We look forward to serving First American's D&O insurance needs in their successful years ahead.

Sincerely,

*Randy Hein*

Randy Hein
Underwriting Manager

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE SIDE OF THE FORM.)

**I.(a) PLAINTIFFS**

GENESIS INSURANCE COMPANY

**DEFENDANTS** 00-7762

ALLEN C. HARPER, LARAINE FRAHM, ALAN JACOBS, DAVID RUSH and LUIGI SALVANESCHI

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

STAMFORD, CT. *A: Broward/0:00cv 1762 nee/Bss*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
DADE COUNTY, FL

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
GREGORY S. GLASSER
STEPHENS, LYNN, KLEIN, PA
9130 S. DADELAND BLVD.
PH-2
MIAMI, FL 33156
(305)670-3700

JOHN W. DUCHELLE
ROSS, DIXON & BELL, LLP
601 PENNSYLVANIA AVE., NW
NORTH BUILDING
WASHINGTON, DC 20004
(202)662-2015

ATTORNEYS (IF KNOWN)

CIV-ROETTGER

MAGISTRATE JUDGE
SELTZER

**(d) CIRCLE COUNTY WHERE ACTION AROSE:**
DADE, MONROE, (BROWARD) PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN X ONE BOX ONLY)

- □ 1. U.S. Government Plaintiff
- □ 3. Federal Question (U.S. Government Not a Party)
- □ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**
(For Diversity Case Only)
(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | □ 1 | ☒ 1 | Incorporated and Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. CAUSE OF ACTION:** Action for Declaratory Relief pursuant to 28 U.S.C. § 2201 and 2202 arising from dispute over insurance contract.

**IVa.** **3** days estimated (for both sides) to try entire case

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS PERSONAL INJURY | B FORFEITURE PENALTY | A BANKRUPTCY | OTHER STATUS |
|---|---|---|---|---|
| X 110 Insurance | | □ 610 Agriculture | □ 422 Appeal 28 USC 158 | □ 400 State Reapportionment |
| □ 120 Marine | □ 310 Airplane | □ 620 Other Food & Drug | □ 423 withdrawal 28 USC 157 | □ 410 Antitrust |
| □ 130 Miller Act | □ 315 Airplane Product Liability | □ 625 Drug Related Seizure of Property 21 USC 881 | | □ 430 Banks and Banking |
| □ 140 Negotiable Instrument | □ 320 Assault, Libel & Slander | □ 630 Liquor Laws | A PROPERTY RIGHTS | □ 450 Commerce/ICC Rates/etc. B |
| □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 330 Federal Employers' Liability | □ 640 R.R. & Truck | □ 820 Copyrights | □ 460 Deportation |
| □ 151 Medicare Act | □ 340 Marine | □ 650 Airline Regs | □ 830 Patent | □ 470 Racketeer Influenced and Corrupt Organizations |
| □ 152 Recovery of Defaulted Student Loans (Excl Veterans) B | □ 345 Marine Product Liability | □ 660 Occupational Safety/Health | □ 840 Trademark | □ 810 Selective Service |
| □ 153 Recovery of Overpayment of Veteran's Benefits B | □ 350 Motor Vehicle | □ 690 Other | B SOCIAL SECURITY | □ 850 Securities/Commodities/ Exchange |
| □ 160 Stockholder's Suits | □ 355 Motor Vehicle Product Liability | | | □ 875 Customer Challenge 12 USC 3410 |
| □ 190 Other Contract | □ 360 Other Personal Injury | A LABOR | □ 861 HIA (1395ff) | □ 891 Agricultural Acts |
| □ 195 Contract Product Liability | | | □ 862 Black Lung (923) | □ 892 Economic Stabilization Act |
| | A TORTS PERSONAL INJURY | □ 710 Fair Labor Standards Act | □ 863 DIWC/DIWW (405(g)) | □ 893 Environmental Matters |
| | □ 362 Personal Injury-Med Malpractice | □ 720 Labor Management Relations B | □ 864 SSID Title XVI | □ 894 Energy Allocation Act |
| | □ 365 Personal Injury-Product Liability | □ 730 Labor Management Reporting & Disclosure Act | □ RSI (405(g)) | □ 895 Freedom of Information Act |
| | □ 368 Asbestos Personal Injury PERSONAL PROPERTY | □ 740 Railway Labor Act | A FEDERAL TAX SUITS | □ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | □ 370 Other Fraud | □ 790 Other Labor Litigation | | □ 950 Constitutionality of State Statutes |
| | □ 371 Truth in Lending B | □ 791 Employee Ret Inc Security Act B | □ 870 Taxes (U.S. Plaintiff or Defendant) | □ 890 Other Statutory Actions' A or B |
| A REAL PROPERTY | □ 380 Other Personal Property Damage | | □ 871 IRS-Third Party 26 USC 7609 | |
| □ 210 Land Condemnation | □ 385 Property Damage Product Liability | | | |

| A REAL PROPERTY | A CIVIL RIGHTS | B PRISONER PETITIONS | | |
|---|---|---|---|---|
| □ 210 Land Condemnation | □ 441 Voting | □ Motions to Vacate Sentence Habeas Corpus | | |
| □ 220 Foreclosure B | □ 442 Employment | □ 530 General | | |
| □ 230 Rent Lease & Ejectment | □ 443 Housing/Accommodations | □ 535 Death Penalty | | |
| □ 240 Torts to Land | □ 444 Welfare | □ 540 Mandamus and Other" | | |
| □ 245 Tort Product Liability | □ 440 Other Civil Rights | □ 550 Civil Rights 'A or B | | |
| □ 290 All Other Real Property | | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

X Original Proceeding
□ Removed from State Court
□ Remanded from Appellate Court
□ Refiled
□ Transferred from another district (specify)
□ 6 Multidistrict Litigation
□ Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT**
CHECK IF THIS IS A
□ UNDER F.R.C.P. 23

CLASS ACTION

DEMAND: in excess of $75,000

□ Check YES only if demanded in complaint:
JURY DEMAND: ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions)
JUDGE_____ DOCKET NUMBER_____

DATE: November 30, 2000

SIGNATURE OF ATTORNEY OF RECORD: *Gregory Glasser* FBN 0014702

UNITED STATES DISTRICT COURT

FOR OFFICE USE ONLY: Receipt No. 521055 Amount $150.00 11-30-00